## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN DOE 6 | : |
| Plaintiff, | : |
| v. | : |
| | : Civil Action No. 13-0336 |
| THE PENNSYLVANIA STATE UNIVERSITY, THE SECOND MILE, and GERALD SANDUSKY, | : |
| Defendants. | : |

## ORDER

AND NOW, this _____ day of _____, 2015, upon consideration of

defendant Pennsylvania State University's Motion to Compel Full and Complete Responses to

Certain of Defendant's Document Requests and any response thereto, it is hereby ORDERED

that the Motion is GRANTED.

It is further ORDERED that plaintiff John Doe 6 shall, within ten (10) days of the date of

this Order, produce all documents responsive to Document Request No. 29. In particular, John

Doe 6 shall, within ten (10) days of the date of this Order, produce all of his medical records,

including but not limited to mental health records.

Furthermore, for all custodians from whom medical records could not be obtained,

Plaintiff shall obtain from such custodians, and, within twenty (20) days of the date of this Order,

produce to the University, information (e.g., affidavits by and/or communications with such

custodians) that shows the efforts made to locate John Doe 6's medical records and, if some or

all of the records no longer exist, when, how and why the records were discarded, destroyed or

lost.  Lastly, plaintiff shall, within twenty (20) days of the date of this Order, provide a verified interrogatory response giving complete list of all of plaintiff's medical providers.

Failure to comply with this Order shall subject Plaintiff to sanctions upon further Order of the Court.

IT IS SO ORDERED

_____
J.

3112.7 02/12/2015

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN DOE 6 | : |
| Plaintiff, | : |
| v. | : |
| | : Civil Action No. 13-0336 |
| THE PENNSYLVANIA STATE UNIVERSITY, THE SECOND MILE, and GERALD SANDUSKY, | : |
| Defendants. | : |
| | : |

## DEFENDANT PENNSYLVANIA STATE UNIVERSITY'S
## MOTION TO COMPEL DISCOVERY FROM PLAINTIFF

Pursuant to Federal Rules of Civil Procedure 26 and 37 and local rule 26(b)(1), defendant Pennsylvania State University (the "University") moves this Court for an Order compelling Plaintiff John Doe 6 to produce his medical records as Plaintiff specifically promised to do, and to identify all of Plaintiff's medical providers, as requested in the University's interrogatories and requests for production. The University relies on the accompanying Memorandum of Law, which is incorporated into this motion.

Defendant The Pennsylvania State University respectfully requests that the Court grant the University's Motion and enter the attached Order.

Respectfully submitted,

_/s/_
Robert C. Clothier
Gregory G. Schwab
Saul Ewing LLP
1500 Market Street, 38th Floor
Philadelphia, PA  19102
215 972-7777

_Attorneys for Defendant The
Pennsylvania State University_

Date:  February 12, 2015

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN DOE 6

           Plaintiff,

        v.

THE PENNSYLVANIA STATE UNIVERSITY,
THE SECOND MILE, and GERALD
SANDUSKY,

           Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No. 13-0336

---

## CERTIFICATION PURSUANT TO LOCAL RULE 26(f)(1)

    I, Robert C. Clothier, certify that defendant Pennsylvania State University has made a reasonable effort to resolve this dispute with plaintiff John Doe 6, but the parties have been unable to resolve the dispute. The University has repeatedly requested full responses to the interrogatories and document requests at issue, both over the phone and in writing. We have reached an impasse regarding these discovery requests.

/s/
Robert C. Clothier

Date: February 12, 2015

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN DOE 6 <br><br>       Plaintiff, <br><br>       v. <br><br> THE PENNSYLVANIA STATE UNIVERSITY, THE SECOND MILE, and GERALD SANDUSKY, <br><br>       Defendants. | : <br> : <br> : <br> : <br> : <br> :    Civil Action No. 13-0336 <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT PENNSYLVANIA STATE UNIVERSITY'S
## MOTION TO COMPEL DISCOVERY

Plaintiff John Doe 6 has placed his physical and mental health directly at issue in this case. Accordingly, plaintiff promised to produce his medical records (including mental health records) since birth. Nonetheless, plaintiff has produced a subset of his medical records, despite the fact that these records were requested one year ago. Moreover, plaintiff has failed to provide a complete list of all medical providers. Pursuant to Federal Rules of Civil Procedure 26 and 37 and local rule 26(b)(1), defendant Pennsylvania State University ("University") moves this Court for an Order compelling Plaintiff John Doe 6 ("Doe 6) to produce all medical records and identify all medical providers.

Plaintiff's delay is actively prejudicing the University, due to the recent destruction of at least one significant provider's records long after the plaintiff filed this lawsuit and well before plaintiff disclosed the provider's identity to the University. The University also seeks an Order compelling Plaintiff to produce information (e.g., affidavits by and/or communications with such

custodians) that shows the efforts made to locate John Doe 6's medical records and, if some or all of the records no longer exist, when, how and why the records were discarded, destroyed or lost.

## I. **BACKGROUND**

### A. **Discovery of Plaintiff's Legal Claims and Alleged Damages**

Doe 6 has brought the instant lawsuit against, *inter alia*, the University, alleging that he suffered physical and emotional harm, *e.g.*:

> a.     he alleges he "has suffered and continues to suffer physical and emotional injuries" that "will likely require medical and psychological care for a lengthy period of time into the future. (See First Amended Complaint (Docket No. 79) at ¶¶ 88-89).
>
> b.     he alleges he "has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, public ridicule, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" and that he "has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling." (Id. at ¶¶ 57, 105, 122, 130, 149).

In order to discover information about these alleged injuries, on February 3, 2014—over a year ago—the University served written interrogatories and requests for production on Plaintiff, certain of which sought plaintiff's medical records and information. See First Set of Interrogatories directed to Plaintiff John Doe 6 and First Set of Requests for Production of Documents Directed to Plaintiff John Doe 6, attached as Exhibits A and B, respectively.

On or around April 4, 2014, Doe 6 served his responses to the University's interrogatories and requests for production, including these responses regarding Plaintiff's treating providers and medical records:

**INTERROGATORY NO. 2:** Identify all Persons you understand at this time to have personal knowledge of the facts material to the Civil Action, and identify the material facts known by each Person, and each Person's name, title, address, and phone number.

**ANSWER:** Plaintiff identifies the following persons:

[(a)-(f) omitted]

(g) Health care providers, including mental health care providers, who have provided care to Plaintiff from May 3, 1998 to the present....

**INTERROGATORY NO. 22:** Identify the names and addresses of all medical, mental health, or other providers with which you have treated from birth to the present.

**ANSWER:** Objection. This Interrogatory is overly broad, unduly burdensome, and requests information that is not relevant and will not lead to the discovery of admissible evidence. Without waiving said objections, Plaintiff states that he has seen numerous providers and directs the Defendant to Health Care Providers listed below and to the medical records attached to these Answers:

- Geisinger Health System

- Sun Pointe Health

**DOCUMENT REQUEST NO. 29:** Any and all documents comprising and/or related to John Doe 6's medical and mental health records from birth to the present.

**RESPONSE:** Objection. Plaintiff objects to this Request on the grounds that it is overly broad, unduly burdensome, and not properly limited in time or scope. Plaintiff further objects to the extent that this Request calls for expert testimony. Without waiving any of the foregoing objections, Plaintiff states many of the documents requested no longer exist as typically medical charts are not maintained and preserved by health care providers for a period of time that would encompass the lifespan thus far of the Plaintiff. Additionally, many of the documents requested are irrelevant and are not likely to lead to the discovery of admissible evidence. Without waiving said objection, Plaintiff will provide a disk of medical records upon execution of an appropriate protective order.

Plaintiff reserves the right to supplement this Response as additional records are made available to Plaintiff throughout the discovery process of this matter.

3112.7 02/12/2015

<u>See</u> Plaintiff John Doe 6's Answers to Interrogatories of Defendant The Pennsylvania State University and Plaintiff John Doe 6's Response to Request for Production of Documents of Defendant The Pennsylvania State University, attached as Exhibits C and D, respectively.

While plaintiff directed the University to the "attached" medical records, none were attached to Plaintiff's response. Plaintiff declined to produce any medical records until a confidentiality order could be agreed upon by the parties and entered by the Court. The University immediately set out to subpoena the two providers that Plaintiff identified.

In the meantime, counsel for the University expressed concern that plaintiff was refusing to identify all of his medical providers, as requested by Interrogatory No. 22. Plaintiff's counsel maintained his objection to the identification of treating providers, and suggested that "we revisit this issue after [the University] has had an opportunity to review Plaintiff's medical records." (May 22, 2014 letter from J. Penn to R. Clothier).[1] Thus, plaintiff's counsel was taking the position that he need not identify plaintiff's medical providers because the medical records plaintiff was producing would identify them.

In response, the University's counsel again pressed for Plaintiff to "provide a full response to this interrogatory [No. 22] seeking the identity of plaintiff's medical, mental and other providers who have treated him since birth." The University's counsel also stated: "[W]e are entitled to plaintiff's full medical history throughout his life and ask that plaintiff produce all

---

[1] In the interest of not burdening the Court with copies of all correspondence between counsel and in the interest of not inadvertently disclosing personal health information—or Doe 6's identity—contained in that correspondence, the University is quoting from, but not attaching to this Motion, the parties' correspondence. The University will submit all correspondence and other documentation requested by the Court for *in camera* review.

-4-

documents comprising and/or relating to plaintiff's medical and mental health records from birth to present." (May 23, 2014 letter from R. Clothier to J. Penn).

In response, Doe 6's counsel stated unequivocally that "Plaintiff will provide medical treatment records from the time of birth." But Doe 6's counsel again refused to identify plaintiff's medical providers and again asked to "revisit [the University's] concern after you have had an opportunity to review Plaintiff's medical records. (June 2, 2014 letter from J. Penn to R. Clothier).

The University's counsel requested confirmation that Plaintiff would produce "all mental health records since birth" as part of the promise to provide medical treatment records. The University's counsel also asked Plaintiff to reconsider the objection to the interrogatory requesting identification of Plaintiff's treating providers: "We do not agree that plaintiff should not be required to identify the health care providers when it was plaintiff who said these health care providers possess information material to plaintiff's claims. Plaintiff places these individuals' identities at issue, and plaintiff should provide their names, contact information and relevant knowledge. We should not have to guess from documents which provider plaintiff believes has material knowledge." (June 5, 2014 letter from R. Clothier to J. Penn).

Plaintiff's counsel confirmed in writing that plaintiff was also producing his "mental health records." Thus, the record could not be clearer that plaintiff promised to produce all medical records, including mental health records. Plaintiff again requested revisiting the issue of identifying every provider until after plaintiff produced his records, as plaintiff had earlier promised to do. (June 10, 2014 letter from J. Penn to R. Clothier).

The University ultimately agreed to hold its challenge to plaintiff's objection to identifying medical providers until it received from plaintiff his medical records, including mental health records. The Court thereafter entered a Confidentiality Order on September 24, 2014. (Docket No. 106).

**B.     The Overwhelmingly Deficient Production of Medical Records Produced By Plaintiff**

Plaintiff thereafter produced—for the first time since he commenced his lawsuit—some of medical records. Plaintiff, however, produced nothing more than records from the two custodians (Geisinger and SunPointe) it had identified in his initial response to interrogatory 22 (whom the University also subpoenaed after plaintiff had previously identified them).[2] This was clearly not all of plaintiff's medical records, as the few records plaintiff did produce identified numerous other providers whom plaintiff had never identified and whose records plaintiff failed to produce. Thus, plaintiff plainly failed to honor his promise to produce his medical records.

The University's counsel complained about the obvious inadequacy of plaintiff's document production and plaintiff's failure to honor his promise to produce his medical records. (November 12, 2014 letter from R. Clothier to J. Penn). In response, Plaintiff's counsel provided a spreadsheet by email on November 28, 2014, that purported to contain a list of Plaintiff's treating providers since birth.

The University felt whip-sawed by the plaintiff. Plaintiff had agreed to provide all medical records in lieu of identifying plaintiff's medical providers. But after months of delay, plaintiff was now reversing his position. He wanted to identify plaintiff's medical providers

---

[2]     Notably, the productions by plaintiff of records from Geisinger and SunPointe differed from the documents produced by these custodians pursuant to subpoenas issued by the University. These differences underscore the importance of plaintiff obtaining his own medical records from his own treating providers.

3112.7 02/12/2015

(which he had previously refused to do), instead of producing the medical records he previously promised to produce.

But the list provided by plaintiff's counsel was clearly deficient, leaving the University in the position of neither knowing all of the medical providers' identities nor having a complete set of medical records. The University's counsel complained to plaintiff's counsel, also raising the issue of potential spoliation of evidence because plaintiff had failed to preserve his own medical records that he put at issue in this case. (December 5, 2014 letter from R. Clothier to J. Penn).

Plaintiff's counsel did not dispute the inadequacy of his list of providers. Rather, he sent a new, second chart identifying medical providers from whom plaintiff requested records. But this chart was also deficient. It was missing names of key providers whose identities were revealed in the few documents plaintiff had produced. More concerningly, plaintiff's chart made it clear that Plaintiff had not contacted many providers and requested their medical records until around December 8, 2014—nearly two years after Plaintiff first commenced his suit, and ten months after the University had specifically requested those records.

Over the next few weeks, plaintiff's counsel and the University's counsel traded numerous correspondence about plaintiff's failures to identify all medical providers and to produce all medical records.

Ultimately, plaintiff agreed to provide a supplemental, verified interrogatory response identifying all medical providers known to date and to request and produce medical records from plaintiff's providers. (December 24, 2014 letter from J. Penn to R. Clothier). However, when plaintiff provided his supplemental response, it came with the general objection that "answers may be incomplete" and that plaintiff had "not completed his investigation of the facts relating to

-7-

this case." (Plaintiff's Second Supplemental Answers to Interrogatories of Defendant The Pennsylvania State University dated January 5, 2015). Plaintiff subsequently agreed to serve a revised supplemental response that would remove the caveat language. (January 20, 2015 letter from J. Penn to R. Clothier). Plaintiff's counsel has yet to provide that supplemental response.

In the meantime, the University had been serving subpoenas on the medical providers belatedly identified by plaintiff and/or the few medical records produced by the plaintiff. In response to one subpoena, a significant treating mental health provider stated that records were destroyed in February 2014—over a year after plaintiff filed suit. The University's counsel forwarded that medical provider's written revelation of the document destruction to plaintiff's counsel and expressed concern about the spoliation of relevant evidence due to plaintiff's lack of diligence in preserving and obtaining medical records. (January 22, 2015 letter from G. Schwab to J. Penn).

Plaintiff produced a handful of medical records on January 29, 2014, his first production of medical records since this original, deficient production in October, 2014. This production did not come close to providing all of plaintiff's medical records as promised. For example, plaintiff has yet to produce any medical records from over a dozen potentially significant medical providers, including multiple mental health providers and plaintiff's longtime primary care physician. It is also apparent that plaintiff's prior production of documents for some providers, including his family physician for several years, was incomplete. Furthermore, plaintiff has indicated that several of plaintiff's key medical providers, including several mental health providers, recently advised Plaintiff that they do not have any records pertaining to plaintiff. However, plaintiff has failed to provide any information, beyond his blanket statement that those providers do not have records, that shows the efforts made to locate John Doe 6's

-8-

medical records and, if some or all of the records no longer exist, when, how and why the records were discarded, destroyed or lost.

Frustrated by plaintiff's continuing failure to do what he promised, the University's counsel requested that plaintiff provide, by February 6, 2015, his written assurance that he would produce all remaining medical records by February 20, 2015. (February 4, 2015 letter from R. Clothier to J. Penn). Plaintiff failed to respond to this request. Nor has plaintiff produced any additional medical records. And his purportedly complete list of all medical providers remains subject to plaintiff's objection that his response "may be incomplete."

## II. **ARGUMENT**

Plaintiff promised to produce his medical records, including mental health records, since birth. Notwithstanding that express, written promise, Plaintiff has produced a small subset of his medical records, failing to produce highly important medical records from numerous providers. The University has been more than patient in giving Plaintiff more than sufficient time to honor his promise. But at this point, still lacking vitally important documents and information, the University needs a deadline set by the Court.

The lack of complete medical records is hindering the progress of the suit and prejudicing the University in several ways.

First, plaintiff's failures are precluding other discovery. Many depositions—including Plaintiff, Plaintiff's parents and siblings, and certain medical providers—cannot take place until all available medical records are obtained. Independent medical examinations of Plaintiff by experts likewise cannot occur until the records are obtained.

Second, Plaintiff's failure to provide earlier disclosure of the identities of his medical providers prevented the University from itself subpoenaing these providers and obtaining their records at an earlier time. Significantly, in at least one instance discovered so far, plaintiff's failures led to the destruction of significant mental health records and potentially serious spoliation of key evidence – all happening before the University found out from the Plaintiff about the identity of the medical provider.

Because of the delays caused by the plaintiff, the University, with the consent of all parties, requested an extension of the Court's Scheduling Order deadlines. That request was granted (Docket No. 111), and the current discovery deadline is June 1, 2015.

This additional time, however, will quickly pass if the plaintiff fails to expeditiously produce his medical records and provide a complete list of his medical providers. The University is entitled to a date certain by which Plaintiff must provide all records (or explain what happened to them) and identify all providers.

Therefore, the University seeks a Court Order compelling plaintiff to do the following:

- Produce to the University all of Plaintiff's medical records by a date certain;
- Produce to the University information (e.g., affidavits by and/or communications with such custodians) that shows the efforts made to locate John Doe 6's medical records and, if some or all of the records no longer exist, when, how and why the records were discarded, destroyed or lost.
- Provide a verified interrogatory response giving complete list of all of plaintiff's medical providers.

-10-

III.    **CONCLUSION**

For the reasons stated herein, defendant The Pennsylvania State University respectfully requests that the Court grant the University's Motion and enter the attached proposed Order.

_____/s/_____

Robert C. Clothier
Saul Ewing LLP
1500 Market Street, 38th Floor
Philadelphia, PA  19102
215 972-7777
*Counsel for defendant*
*The Pennsylvania State University*

Date:  February 12, 2015

3112.7 02/12/2015

# EXHIBIT
## A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN DOE 6,                                :
                                           :
             Plaintiff                     :          CIVIL ACTION
                                           :
        v.                                 :          No. 2:13-cv-000336
                                           :
THE PENNSYLVANIA                           :
STATE UNIVERSITY, THE                      :
SECOND MILE, and GERALD                    :
SANDUSKY,                                  :
                                           :
             Defendants.                   :

**FIRST SET OF INTERROGATORIES
DIRECTED TO PLAINTIFF JOHN DOE 6**

Defendant The Pennsylvania State University hereby directs Plaintiff John Doe 6 ("John

Doe 6") to respond to the within First Set of Interrogatories(the "Interrogatories") pursuant to

Rules 26 and 33 of the Federal Rules of Civil Procedure, which, among other things, require

John Doe 6 to update responses to these Interrogatories as additional information becomes

available and to remedy incorrect or incomplete responses.

        The following definitions and instructions apply to each interrogatory unless the context

clearly indicates otherwise.

**Definitions**

        1.      "Address" means street address, including, without limitation, apartment or suite

number, if applicable, city, state and zip code.

        2.      "All" means each and every.

        3.      "All Documents" means every document, whether an original or copy, as defined

herein, known to you, and every such document or writing which you can locate or discover by

reasonable diligent efforts.

4. "And" means and/or and shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

5. "Any" means any and all.

6. "Civil Action" means the civil action styled and pending as <u>John Doe 6 v. The Pennsylvania State University, The Second Mile, and Gerald Sandusky</u> and docketed in the Court (as defined below) as No. 2:13-cv-000336-AB.

7. "Communication" means any manner or means of disclosure, transfer, or exchange, and any disclosure, transfer or exchange of information whether orally or by document, or whether face-to-face, by telephone, mail or personal delivery.

8. "Complaint" means the First Amended Complaint filed in the Civil Action by Plaintiff (as defined below).

9. "Concerning" means referring to, alluding to, responding to, related to, connected with, commenting upon, in respect of, about, regarding, discussing, showing, describing, mentioning, reflecting, analyzing, constituting, pertaining to and/or evidencing.

10. "Court" means the United States District Court for the Eastern District of Pennsylvania.

11. "Document" or "Documents" mean all written, typewritten, handwritten, recorded or printed matter of any kind, including, without limitation, the originals and all non-identical copies thereof, whether different from the originals by reason of any notation made upon such copies or otherwise, including, again without limitation, minutes and/or other records of meetings, agendas, bills, contracts, leases, assignments, agreements, contracts, summaries or negotiations, account books, orders, invoices, statements, bills, checks, accounting records,

vouchers, summaries, diaries, forecasts, studies, drawings, graphs, charts, reports and/or summaries of investigations or reports, strategic or business plans or summaries, brochures, pamphlets, publications, circulars, advertisements, trade letters, press releases, statements of policy, correspondence, letters, telegrams, interoffice and intraoffice communications, offers, notations of any sort of conversations, appointment books or calendars, teletypes, telefax, thermafax, confirmations, computer files, printouts of computer files, computer data (included but not limited to, information or programs stored in a computer, whether or not ever printed out or displayed); all drafts, alterations, modifications, changes and amendments of any of the foregoing; all graphic or manual records or representations of any kind, including, without limitation, photographs, microfiche, microfilm, videotape, records, motion pictures, and electronic, mechanical or electric records or representations of any kind, including, without limitation, tapes, cassettes, disks, magnetic cards, and recordings; and all other similar material which is in your possession, custody or control. Without limiting the term "control" as used in the preceding sentence, a document shall be deemed to be within your control, regardless of its physical location, if you have the right to secure the document or a copy thereof from another person or entity, either public or private, including, but not limited to, your legal counsel, having actual possession thereof.

12.     "Document Requests" mean the First Request for the Production of Documents Directed to Plaintiff John Doe 6 (as defined below) by Defendant The Pennsylvania State University.

13.     "Each" means each and every.

14. "John Doe 6" means Plaintiff in the Civil Action, as well as each and every one of John Doe 6's representatives, agents, servants, successors, assigns, independent contractors, and all others acting for and/or on John Doe 6's behalf.

15. "Identify" or "identity," when used in reference to an individual person, means to state his or her full name, present or last known business address, and residential address if no present business address is known, telephone number and the name of such person's present or last known employer, place of employment and position, and the position during the relevant time period.

16. "Identify" or "identity," when used in reference to an entity, means to state its full and complete name and the present or last known address of its headquarters or principal place of business.

17. "Identify" or "identity," when used in reference to a document, means to state the nature of the document (*e.g.*, letter, memorandum, *etc.*); the date, if any, appearing on the document; the identity of the person(s) who wrote, signed, dictated or otherwise participated in the preparation of the document; the identity of all persons who received copies of the document; and the present location and custodian of the document.

18. "Identify" or "identity," when used in reference to a meeting or to an oral communication, means to state the following: the date and place thereof; the identity of the individual(s) who initiated the meeting or oral communication, the identity of each person who participated in, or who was present at, any part, or all, of the meeting or oral communication, or who became privy to the substance of the meeting or oral communication; the subject of the meeting or oral communication, and whether the meeting or oral communication occurred in person or by telephone and, if both, the method by which each individual participated.

19.     "Incident" means the entire encounter between Sandusky (as defined below) and John Doe 6 (as defined above) occurring on May 3, 1998.

20.     "Meeting" means any assembly, communication, convocation, encounter or coincidence of two or more persons for any purpose, whether or not planned, arranged or scheduled in advance, whether in person, by telephone, or otherwise.

21.     "Oral communication" means any utterance spoken or heard, whether in person, by telephone, or otherwise.

22.     "Person" means any and all entities, as well as natural persons, and, without limitation, shall be defined to include natural persons, corporations, sole proprietorships, partnerships, joint owners, associations, companies, governmental bodies or agencies and joint ventures.

23.     "Plaintiff" means John Doe 6 (as defined above) as the plaintiff in the Civil Action (as defined above).

24.     "Police Department" means The Pennsylvania State University Police Department at University Park.

25.     "Refer," "relate," "reflect," "regard," "refer to," "relate to," "relating to," and "concerning" (or forms thereof) shall mean directly or indirectly, in whole or in part, referring to, relating to, connected with, commenting upon, relevant to, impinging or impacting upon, affecting, responding to, showing, describing, representing, supporting, contradicting, stating, mentioning, showing, evaluating, recording, noting, analyzing, reflecting or constituting.

26.     "Sandusky" means Defendant Gerald Sandusky, defendant in the Civil Action (as defined above).

27. "University" means Defendant The Pennsylvania State University, defendant in the Civil Action as well as its officials, officers, employees, representatives, servants, agents, independent contractors, and all others acting for, and/or purporting to act, on its behalf.

28. "You" or "your" means John Doe 6 (as defined above).

## Instructions

A. If you claim any form of privilege, whether based upon statute or otherwise, as a ground for not answering any interrogatory or any part of an interrogatory, set forth all facts upon which such claim of privilege is based.

B. If you claim any form of privilege, whether based upon statute or otherwise, as a ground for not identifying requested documents in response to an interrogatory, identify the interrogatory to which the document is responsive and set forth all facts upon which such claim of privilege is based, and for each document as to which you claim any form of privilege, identify (i) the date of the document, (ii) the date upon which the document was prepared, (iii) the title or caption of the document, (iv) the form of the document (*e.g.* letter, memorandum, chart, *etc.*), (v) the subject matter of the document, (vi) the author(s) and/or any and all other persons involved or participating in preparing or drafting the document, (vii) and the recipient(s) of the document or any copy thereof, including all persons to whom the document has been provided or who have it within their possession, custody or control.

C. If you claim any form of privilege, whether based upon statute or otherwise, as a ground for not identifying requested oral communications in response to an interrogatory, identify the interrogatory to which the oral communication is responsive and set forth all facts upon which such claim of privilege is based, and for each oral communication as to which you claim any form of privilege, identify (i) the date upon which the oral communication took place,

(ii) the subject matter of the oral communication, (iii) the person who made the oral communication, and (iv) the identify the person(s) to whom the oral communication was made.

D.      Whenever an interrogatory requests you to "state the fact" or "describe," you should provide all information relating or referring to the subject matter of the interrogatory, including, but not limited to, a specification of dates of all events which relate to such subject matter, the identity of all oral communications and meetings relating to the subject matter, the identity of all persons with knowledge of the facts that relate to such subject matter, and the identity of all documents which relate or refer to, or contain, information concerning the subject matter of such interrogatory.  If there were any oral or written communications concerning the subject matter of the interrogatory, include the identity of the participants to such communications and set forth the substance of such communications.

E.      If any document responsive to any interrogatory has been destroyed, identify (i) any and all persons who participated in, or who were involved in, the decision to destroy such document, (ii) any document retention or destructions policy under which such document was destroyed and any and all persons who participated in, or who were involved in, the formulation of any such policy, (iii) the reason for the destruction of such document, and (iv) the date (or approximate date if precise date is not known) of the destruction of such document.

F.      Whenever a date, amount or other computation or figure is requested by an interrogatory, the exact date, amount or other computation of figure is to be given, unless it is not known.  If the exact date, amount or other computation or figure is not known, the approximate date, amount, or other computation or figure should be given or the best estimate thereof and the answer should state the date, amount, or other computation or figure is an estimate or approximation.

G.     Where facts are set forth in the answer to an interrogatory or a portion thereof, and are supplied upon information and belief, rather than your direct personal knowledge, you should so state, and specifically identify each source of such information and belief.  Should you not be able to answer any interrogatory, or any portion thereof, by either actual knowledge or upon information or belief, you should so state.  Whenever a full and complete answer to any interrogatory or any subpart thereof is contained in a document identified as answering a specific numbered interrogatory or subpart thereof, the document may be supplied in lieu of a written answer.

H.     Whenever an interrogatory calls for information which is not available to you in the form requested, but is available in another form or can be obtained at least in part from other sources in your possession, so state and either supply the information requested in the form in which it is available, or supply the sources from which the information can be obtained.

I.     Except for reference to defined or designated terms, or unless otherwise expressly stated, each of the following interrogatories shall be construed independently and not by reference to any other interrogatory herein for purposes of limitation.

### Interrogatories

1.     Identify all persons who contributed to or provided responsive information to the Interrogatories or Document Requests.

**ANSWER:**

2. Identify all Persons you understand at this time to have personal knowledge of the facts material to the Civil Action, and identify the material facts known by each Person, and each Person's name, title, address, and telephone number.

**ANSWER:**

3. Identify all Persons whom you will call as expert witnesses at the Civil Action's trial or from whom you intend to obtain an expert report, and for each such Person, identify each such Person's name, title, address and telephone number, qualifications; all facts, documents and testimony provided to each such Person; and a summary of each such Person's conclusions.

**ANSWER:**

4. State your full name, current address, and all addresses where you have lived since January 1, 1997.

**ANSWER:**

5. State whether you have ever been arrested, and if you have, state the date, location, and circumstances of each arrest as well as the law enforcement agency involved.

**ANSWER:**

6.     State whether you have ever been convicted of a criminal offense punishable by death or imprisonment for more than one year, and, if you have, identify those offense(s), the date(s) of your conviction(s), the prosecuting authority involved, the circumstances that caused you to be convicted, and the sentence(s) you received.

**ANSWER:**

7.     Identify each and every Person whom you contend was an agent, servant, and/or employee of the University that observed Sandusky "inappropriately showering with young boys in the Lasch Building (now East Area Locker Building or 'Old Lasch')" prior to May 1998, as alleged in paragraph 18 of the First Amended Complaint.

**ANSWER:**

8.     Identify and describe in detail all facts and evidence supporting your contention that, prior to the Incident, the University knew Sandusky showered with minor boys and/or was a sexual predator or abuser of minor boys.

**ANSWER:**

9.     Identify and describe in detail all facts and evidence supporting your contention that, prior to the Incident, the University should have known Sandusky showered with minor

boys and/or was a sexual predator or abuser of minor boys, and explain the way(s) in which the University should have acquired such knowledge.

**ANSWER:**


10.     Identify and describe in detail all facts and evidence that support your contention in paragraph 98 of the First Amended Complaint that the University knew of and actively concealed "Sandusky's pedophilia" prior to the Incident.

**ANSWER:**


11.     Identify and explain the "conflicts of interest" to which you refer in paragraph 43 of the First Amended Complaint, and how you believe they impacted you.

**ANSWER:**


12.     Identify and explain, with precision, what you believe the University did incorrectly in investigating the Incident and/or speaking with or interviewing you after the Incident, and what you believe the University should have done differently.

**ANSWER:**

13.     Identify and describe in detail all "inappropriate investigation techniques" to which you refer in paragraph 48 of the First Amended Complaint.

**ANSWER:**

14.     Identify and describe in detail each and every unpermitted, harmful, and offensive sexual conduct and contact that you contend occurred between Sandusky and John Doe 6 after the Incident; the date of such conduct and/or contact; and the geographic location of such conduct and/or contact.

**ANSWER:**

15.     Identify and describe in detail all facts and evidence that support your contention in paragraph 101 of the First Amended Complaint that "Sandusky's sexual misconduct was ratified by" the University.

**ANSWER:**

16. Identify and describe in detail all facts and evidence that you contend support your assertion that the University and Sandusky agreed and/or combined to unlawfully conceal the Incident and the way(s) in which you contend such agreement and/or combination harmed and caused damages to you.

**ANSWER:**


17. Identify and describe in detail all facts and evidence that you contend support your assertion that the University and Sandusky agreed and/or combined to unlawfully conceal that Sandusky sexually abused and/or showered with minor boys prior to 1998 and the way(s) in which you contend such agreement and/or combination harmed and caused damages to you.

**ANSWER:**


18. Identify and describe in detail all facts and evidence that you contend support your assertion that the University and Sandusky agreed and/or combined to unlawfully conceal that Sandusky engaged in an ongoing course of abusive behavior toward John Doe 6 after the Incident and the way(s) in which you contend such agreement and/or combination harmed and caused damages to John Doe 6.

**ANSWER:**

19.    State whether you obtained a copy of any documents from the Police Department's criminal investigation file of the Incident, and, if you have, identify and describe the documents obtained, how you obtained them, and with whom you have shared such documents.

**ANSWER:**


20.    Identify each and every position of employment you have held since attaining age 18, and for each position, state the name and address of the employer, the name and title of your last supervisor, and the dates you were employed.

**ANSWER:**


21.    For each cause of action asserted in the First Amended Complaint, identify and describe in detail the damages alleged to have been suffered by John Doe 6, including providing an itemized listing of damages by category, the amount(s) by category, and the alleged basis for those damages; and any and all medical and/or psychological services providers who treated John Doe 6 for any condition related to any of the damages identified.

**ANSWER:**

22.    Identify the names and addresses of all medical, mental health, or other providers with which you have treated from birth to the present.

**ANSWER:**


23.    Identify whether you plan to move from your current address within the next two (2) years, and if so, where.

**ANSWER:**


24.    State whether you have had any contact with Freeh Sporkin & Sullivan and, if so, identify and explain when, the nature of the contact, and any and all communications or documents shared with Freeh Sporkin & Sullivan.

**ANSWER:**


25.    Identify and describe in detail all communications you have had with Sandusky since May 3, 1998.

**ANSWER:**


Date:  February 3, 2014

_____
James A. Keller (Atty. I.D. No. 78955)
Joseph F. O'Dea (Atty. I.D. No. 48370)
Joshua W.B. Richards (Atty. I.D. No. 204315)

Gregory G. Schwab (Atty. I.D. No. 93310)
Saul Ewing LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
*Counsel for The Pennsylvania State University*

## CERTIFICATE OF SERVICE

I, James A. Keller, Esquire, hereby certify that on this 3rd day of February, 2014, I did

cause a true and correct copy of the foregoing First Set of Interrogatories Directed to Plaintiff

John Doe 6 to be served upon the following parties via electronic and first-class mail:

Howard A. Janet, Esquire
Hal Kleinman, Esquire
Jason B. Penn, Esquire
Kenneth Suggs, Esquire
Janet Jenner & Suggs LLC
Commerce Centre East
1777 Reistertown Rd. Ste 165
Baltimore, MD 21208
*Counsel for Plaintiff*

Howard A. Rosenthal, Esquire
Patrick J. Doran, Esquire
Archer & Greiner, P.C.
One Liberty Place, 32nd Floor
1650 Market Street
Philadelphia, PA 19103

Bryan D. McElvaine, Esquire
Meaghann C. Porth, Esquire
William J. Conroy, Esquire
Campbell, Campbell, Edwards & Conroy
1205 Westlakes Drive, Suite 330
Berwyn, PA 19312
*Counsel for The Second Mile*

Charles J. Benjamin, Jr., Esquire
Richard A. Beran, Esquire
Joshua H. Roberts, Esquire
McCarter & English
735 Market St., Suite 700
Philadelphia, PA 19103
*Counsel for Gerald Sandusky*

Date: February 3, 2014

# EXHIBIT
# B

JOHN DOE 6,

        Plaintiff

      v.

THE PENNSYLVANIA
STATE UNIVERSITY, THE
SECOND MILE, and GERALD
SANDUSKY,

        Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:

CIVIL ACTION

No. 2:13-cv-000336

## FIRST SET OF REQUESTS FOR PRODUCTION OF
## DOCUMENTS DIRECTED TO PLAINTIFF JOHN DOE 6

Defendant The Pennsylvania State University hereby directs Plaintiff John Doe 6 ("John Doe 6") to respond to the within First Set of Requests for Production of Documents ("Document Requests") pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, which, among other things, require John Doe 6 to update responses to these Document Requests as additional information becomes available and to remedy incorrect or incomplete responses.

The following definitions and instructions apply to each document request unless the context clearly indicates otherwise.

### Definitions

1.     "Address" means street address, including, without limitation, apartment or suite number, if applicable, city, state and zip code.

2.     "All" means each and every.

3.     "All Documents" means every document, whether an original or copy, as defined herein, known to you, and every such document or writing which you can locate or discover by reasonable diligent efforts.

4. "And" means and/or and shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

5. "Any" means any and all.

6. "Civil Action" means the civil action styled and pending as <u>John Doe 6 v. The Pennsylvania State University, The Second Mile, and Gerald Sandusky</u> and docketed in the Court (as defined below) as No. 2:13-cv-000336-AB.

7. "Communication" means any manner or means of disclosure, transfer, or exchange, and any disclosure, transfer or exchange of information whether orally or by document, or whether face-to-face, by telephone, mail or personal delivery.

8. "Complaint" means the First Amended Complaint filed in the Civil Action by Plaintiff (as defined below).

9. "Concerning" means referring to, alluding to, responding to, related to, connected with, commenting upon, in respect of, about, regarding, discussing, showing, describing, mentioning, reflecting, analyzing, constituting, pertaining to and/or evidencing.

10. "Court" means the United States District Court for the Eastern District of Pennsylvania.

11. "Document" or "Documents" mean all written, typewritten, handwritten, recorded or printed matter of any kind, including, without limitation, the originals and all non-identical copies thereof, whether different from the originals by reason of any notation made upon such copies or otherwise, including, again without limitation, minutes and/or other records of meetings, agendas, bills, contracts, leases, assignments, agreements, contracts, summaries or negotiations, account books, orders, invoices, statements, bills, checks, accounting records,

vouchers, summaries, diaries, forecasts, studies, drawings, graphs, charts, reports and/or summaries of investigations or reports, strategic or business plans or summaries, brochures, pamphlets, publications, circulars, advertisements, trade letters, press releases, statements of policy, correspondence, letters, telegrams, interoffice and intraoffice communications, offers, notations of any sort of conversations, appointment books or calendars, teletypes, telefax, thermafax, confirmations, computer files, printouts of computer files, computer data (included but not limited to, information or programs stored in a computer, whether or not ever printed out or displayed); all drafts, alterations, modifications, changes and amendments of any of the foregoing; all graphic or manual records or representations of any kind, including, without limitation, photographs, microfiche, microfilm, videotape, records, motion pictures, and electronic, mechanical or electric records or representations of any kind, including, without limitation, tapes, cassettes, disks, magnetic cards, and recordings; and all other similar material which is in your possession, custody or control. Without limiting the term "control" as used in the preceding sentence, a document shall be deemed to be within your control, regardless of its physical location, if you have the right to secure the document or a copy thereof from another person or entity, either public or private, including, but not limited to, your legal counsel, having actual possession thereof.

12.     "Each" means each and every.

13.     "John Doe 6" means Plaintiff in the Civil Action, as well as each and every one of John Doe 6's representatives, agents, servants, successors, assigns, independent contractors, and all others acting for and/or on John Doe 6's behalf.

14.     "Identify" or "identity," when used in reference to an individual person, means to state his or her full name, present or last known business address, and residential address if no

present business address is known, telephone number and the name of such person's present or last known employer, place of employment and position, and the position during the relevant time period.

15. "Identify" or "identity," when used in reference to an entity, means to state its full and complete name and the present or last known address of its headquarters or principal place of business.

16. "Identify" or "identity," when used in reference to a document, means to state the nature of the document (*e.g.*, letter, memorandum, *etc.*); the date, if any, appearing on the document; the identity of the person(s) who wrote, signed, dictated or otherwise participated in the preparation of the document; the identity of all persons who received copies of the document; and the present location and custodian of the document.

17. "Identify" or "identity," when used in reference to a meeting or to an oral communication, means to state the following: the date and place thereof; the identity of the individual(s) who initiated the meeting or oral communication, the identity of each person who participated in, or who was present at, any part, or all, of the meeting or oral communication, or who became privy to the substance of the meeting or oral communication; the subject of the meeting or oral communication, and whether the meeting or oral communication occurred in person or by telephone and, if both, the method by which each individual participated.

18. "Incident" means the entire encounter between Sandusky (as defined below) and John Doe 6 (as defined above) occurring on May 3, 1998.

19. "Interrogatories" mean the First Set of Interrogatories Directed to Plaintiff John Doe 6 (as defined below) by Defendant The Pennsylvania State University.

20. "Meeting" means any assembly, communication, convocation, encounter or coincidence of two or more persons for any purpose, whether or not planned, arranged or scheduled in advance, whether in person, by telephone, or otherwise.

21. "Oral communication" means any utterance spoken or heard, whether in person, by telephone, or otherwise.

22. "Person" means any and all entities, as well as natural persons, and, without limitation, shall be defined to include natural persons, corporations, sole proprietorships, partnerships, joint owners, associations, companies, governmental bodies or agencies and joint ventures.

23. "Plaintiff" means John Doe 6 (as defined above) as the plaintiff in the Civil Action (as defined above).

24. "Police Department" means The Pennsylvania State University Police Department at University Park.

25. "Refer," "relate," "reflect," "regard," "refer to," "relate to," "relating to," and "concerning" (or forms thereof) shall mean directly or indirectly, in whole or in part, referring to, relating to, connected with, commenting upon, relevant to, impinging or impacting upon, affecting, responding to, showing, describing, representing, supporting, contradicting, stating, mentioning, showing, evaluating, recording, noting, analyzing, reflecting or constituting.

26. "Sandusky" means Defendant Gerald Sandusky, defendant in the Civil Action (as defined above).

27. "Second Mile" means Defendant The Second Mile, defendant in the Civil Act (as defined above).

28. "University" means Defendant The Pennsylvania State University, defendant in the Civil Action as well as its officials, officers, employees, representatives, servants, agents, independent contractors, and all others acting for, and/or purporting to act, on its behalf.

29. "You" or "your" means John Doe 6 (as defined above).

### Instructions

A. The Documents requested herein are to be produced (i) as they are kept in the usual course of business or (ii) organized and labeled to correspond to the numbered paragraphs and/or categories of particular requests for production, and if responsive to more than one request for production, produced in response to the first request to which it is responsive. If there are no Documents responsive to a particular numbered request for production and/or category of Documents, so state in writing. Electronically stored information shall be produced in its native format without cleansing, purging or deletion of any and all metadata.

B. If you claim any form of privilege, whether based upon statute or otherwise, as a ground for not producing any Document or other tangible thing, set forth all facts upon which such claim of privilege is based.

C. If you claim any form of privilege, whether based upon statute or otherwise, as a ground for not producing any Document or other tangible thing, identify the subject document or tangible thing and set forth all facts upon which such claim of privilege is based, and for each Document or tangible thing as to which you claim any form of privilege, identify (i) the date or the Document, (ii) the date upon which the Document or tangible thing was prepared, (iii) the title or caption of the Document, (iv) the form of the Document or tangible thing (*e.g.*, letter, memorandum, chart, *etc.*), (v) the subject matter of the Document or tangible thing, (vi) the author(s) and/or any and all other persons involved or participating in preparing or drafting the

Document or tangible thing, (vii) and the recipient(s) of the Document and/or other tangible thing or any copy thereof, including all persons to whom the Document or tangible thing has been provided or who have it within their possession, custody or control.

D.      If any Document or other tangible thing responsive to any request for production has been destroyed, identify (i) any and all persons who participated in, or who were involved in, the decision to destroy such Document or other tangible thing, (ii) any Document retention or destruction policy under which such Document or other tangible thing was destroyed and any and all persons who participated in, or who were involved in, the formulation of any such policy, (iii) the reason for the destruction of such Document or other tangible thing, and (iv) the date (or approximate date if precise date is not known) of the destruction of such Document or other tangible thing.

E.      Except for reference to defined or designated terms, or unless otherwise expressly stated, each request for production shall be construed independently and not by reference to any other request for production of Documents or other tangible things herein for purposes of limitation.

F.      All Documents produced in response to each request for production of Documents shall be provided in their entirety notwithstanding the fact that portions thereof may contain information not requested.  All interim, as well as final, versions of the Document shall be produced, and all versions or copies that are not identical to the original or other produced copy of the Document, whether due to handwritten notations, modifications, changes, amendments, revisions or otherwise, shall be produced.

G.     Where anything has been deleted from a Document produced, (i) specify the nature of the material deleted, (ii) specify the reason(s) for the deletion, and (iii) identify the person(s) responsible for the deletion.

H.     If any request for production of Documents herein cannot be complied with in full, it shall be complied with to the extent possible with an explanation as to why full compliance is not possible.

## Documents Requested

1.     Any and all documents that refer to, relate to, or are otherwise identified or relied upon by you in any of your answers to, or in answering, the Interrogatories.

2.     Any and all documents that relate to or support your First Amended Complaint and the allegations made therein.

3.     Any and all documents you intend to rely on or use for any purpose at trial.

4.     Any and all documents that support, relate or evidence in any way the damages alleged to have been suffered by John Doe 6.

5.     Any and all documents that support your contention, in paragraph 12 of the First Amended Complaint, that the University "granted Sandusky unfettered access to its facilities, including but not limited to its weight rooms, training rooms, offices, and showers."

6.     Any and all documents that relate to or support the alleged "social and financial relationship" between the University, Sandusky, and Second Mile, as averred in paragraph 14 of the First Amended Complaint.

7.     Any and all documents related to the Incident.

8.     Any and all documents related to the University's and/or Police Department's investigation of the Incident or your investigation of the Incident, whether in 1998 or subsequently.

9.     Any and all documents related to communications between (a) Sandusky and (b) John Doe 6 and/or John Doe 6's mother before or after the Incident.

10.     Any and all documents related to or containing statements or testimony made by John Doe 6 or his mother related to or describing the Incident or the University's investigation thereof.

11.     Any and all documents that relate to or support your contention that prior to the Incident, the University knew or should have known that Sandusky showered with minor boys and/or was a sexual predator or abuser of minor boys, as alleged in paragraphs 18, 22, 23, 24, and 99 of the First Amended Complaint.

12.     Any and all documents that relate to or support your contention that prior to the Incident, the University concealed from John Doe 6, his mother, and others the University's knowledge that Sandusky showered with minor boys and/or was a sexual predator or abuser of minor boys, as alleged in paragraphs 21, 22, 32, 82, 83, 98, 99, 104, 141, and 147 of the First Amended Complaint.

13.     Any and all documents related to the Incident and/or the University's investigation thereof exchanged between the following:  John Doe 6 or his mother; John Doe 6 and any other party, including any media entity, and prospective attorney who was not retained, or any friends or relatives; the University; the Police Department; Sandusky; Second Mile; the State College Police Department; Alycia Chambers, Ph.D.; the Attorney General's Office of the

Commonwealth of Pennsylvania; Centre County Children and Youth Services; and/or the District Attorney's Office of Centre County, Pennsylvania.

14. Any and all medical and mental health records, including any documents related to John Doe 6's meeting with Alycia Chambers, Ph.D., as alleged in paragraph 42 of the Complaint.

15. Any and all documents related to and/or describing the "conflicts of interest" alleged in paragraph 44 of the Complaint.

16. Any and all documents related to and/or describing the "procedures and methodology" alleged in paragraph 45 of the Complaint.

17. Any and all documents related to and/or evidencing your contention, in paragraph 45 of the Complaint, that the "re-interview" of John Doe 6 was intimidating and contained "subtle and not so subtle conduct on the part of the interviewers" designed to increase John Doe 6's "concern about being blamed for any trouble that might befall Sandusky as a result of the events being investigated."

18. Any and all documents related to and/or supporting your contention, in paragraph 46 of the Complaint, that "the second interview [of John Doe 6] should not have occurred[,] . . . should not have included an unknown second person[,] . . . [and that t]he second interview and the introduction of an additional adult investigator created a hostile environment causing direct harm to John Doe 6."

19. Any and all documents related to and/or supporting your contention that the University's and/or the Police Department's response to or investigation into the Incident was intimating and abusive toward John Doe 6.

20.     Any and all documents related to and/or describing the "inappropriate investigation techniques" alleged in paragraph 48 of the First Amended Complaint.

21.     Any and all documents related to and/or describing the way in which you believe the University and/or Police Department should have responded to or investigated the Incident.

22.     Any and all documents related to the May 8, 1998 evaluation of John Doe 6 as alleged in paragraph 51 of the First Amended Complaint.

23.     Any and all documents related to and/or describing the University's investigator's belief that "Sandusky's conduct warranted criminal charges" and the "District Attorney['s decision not] . . . to formally charge Sandusky" as alleged in paragraph 56 of the First Amended Complaint.

24.     Any and all documents related to your contentions in paragraphs 57, 105, 116, 122,130, and 149 of the First Amended Complaint, that as a result of the Incident and the University's actions and/or omissions, John Doe 6 has suffered, and continues to suffer, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, been the subject of public ridicule, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; was prevented and will continue to be prevented from performing his daily activities and obtaining the full enjoyment of life; has sustained and will continue to sustain loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

25.     Any and all documents related to and/or in support of your contention, in paragraph 91 of the First Amended Complaint, that the injuries allegedly suffered by John Doe 6 "are expected to be permanent in nature."

26.     Any and all documents related to and/or in support of your contention, in paragraph 135 of the First Amended Complaint, that John Doe 6 "suffered severe emotional distress, including severe mental anguish and horror, because of [the University's] and Second Mile's reckless, extreme and outrageous conduct."

27.     Any and all documents related to and/or in support of your contention, in paragraph 139 of the First Amended Complaint, that the University and Sandusky "agreed and/or combined to unlawfully conceal from the public that Sandusky "showered with young boys prior to 1998."

28.     Any and all documents related to and/or in support of your contention, in paragraph 139 of the First Amended Complaint, that the University and Sandusky "agreed and/or combined to unlawfully conceal from the public" that Sandusky sexually abused young boys in a shower prior to 1998.

29.     Any and all documents comprising and/or related to John Doe 6's medical and mental health records from birth to the present.

30.     A copy of documents that you understand to be from the Police Department's criminal investigation file concerning the Incident.

31.     Any and all documents that you or your counsel provided to, or received from, any member of the media or third party regarding the Incident, the criminal proceedings against Sandusky, or the allegations in the First Amended Complaint.

32.     Any and all of your Forms W-2 or Forms 1099 and/or other documents evidencing your income for each year you have filed federal income taxes or earned income.

33.     Any and all diplomas you have earned.

34.     Any and all transcripts from any school you have attended from 1997 to the present.

35.     Any and all expert reports related to any allegation in the First Amended Complaint.

36.     Any and all communications you have had with any other individual who claims to have been sexually abused by Sandusky.

37.     Any and all documents evidencing your registration for any events organized by, sponsored by, promoted by, or in any way related to Second Mile.


Date: February 3, 2014

James A. Keller (Atty. I.D. No. 78955)
Joseph F. O'Dea (Atty. I.D. No. 48370)
Joshua W.B. Richards (Atty. I.D. No. 204315)
Gregory G. Schwab (Atty. I.D. No. 93310)
Saul Ewing LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
*Counsel for The Pennsylvania State University*

## CERTIFICATE OF SERVICE

I, James A. Keller, hereby certify that on this 3rd day of February, 2014, I did cause a

true and correct copy of the foregoing First Set of Requests for Production of Documents

Directed to Plaintiff John Doe 6 to be served upon the following parties via first-class mail:

Howard A. Janet, Esquire
Hal Kleinman, Esquire
Jason B. Penn, Esquire
Kenneth Suggs, Esquire
Janet Jenner & Suggs LLC
Commerce Centre East
1777 Reistertown Rd. Ste 165
Baltimore, MD 21208
*Counsel for Plaintiff*

Howard A. Rosenthal, Esquire
Patrick J. Doran, Esquire
Archer & Greiner, P.C.
One Liberty Place, 32nd Floor
1650 Market Street
Philadelphia, PA 19103

Bryan D. McElvaine, Esquire
Meaghann C. Porth, Esquire
William J. Conroy, Esquire
Campbell, Campbell, Edwards & Conroy
1205 Westlakes Drive, Suite 330
Berwyn, PA 19312
*Counsel for The Second Mile*

Charles J. Benjamin, Jr., Esquire
Richard A. Beran, Esquire
Joshua H. Roberts, Esquire
McCarter & English
735 Market St., Suite 700
Philadelphia, PA 19103
*Counsel for Gerald Sandusky*

Date: February 3, 2014                    _____

# EXHIBIT
# C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN DOE 6** <br> c/o Janet, Jenner & Suggs, LLC <br> 1777 Reisterstown Road <br> Commerce Center East, Suite 165 <br> Baltimore, Maryland 21208 | § <br> § <br> § <br> § <br> § <br> § | CIVIL ACTION |
|                  **PLAINTIFF** | § | |
| v. | § <br> § | No. 2:13-cv-000336-AB |
| **THE PENNSYLVANIA STATE UNIVERSITY** <br> 201 Old Main <br> University Park, PA 16802 | § <br> § <br> § <br> § | |
| and | § <br> § | |
| **THE SECOND MILE** <br> 1402 South Atherton St. <br> State College, PA 16081 | § <br> § <br> § <br> § | **JURY TRIAL DEMANDED** |
| and | § <br> § | |
| **GERALD SANDUSKY** <br> 130 Grandview Road <br> State College, PA 16801-7011, <br> Individually and in his official capacity for <br> The Second Mile | § <br> § <br> § <br> § <br> § <br> § | |
|           **DEFENDANTS** | § | |

## PLAINTIFF JOHN DOE 6'S ANSWERS TO INTERROGATORIES
## OF DEFENDANT THE PENNSYLVANIA STATE UNIVERSITY

Plaintiff, John Doe 6, by counsel, submits the following Answers to Defendant, Pennsylvania State University's, First Set of Interrogatories to Plaintiff, pursuant to Federal Rule of Civil Procedure 33 as follows:

### GENERAL OBJECTIONS

The information supplied in these Answers is not based solely on knowledge of the executing parties but includes the knowledge of the party's agents, representatives, and attorneys, unless privileged. These Answers are drafted by counsel and their word usage and sentence structure are that of counsel and do not purport to be the exact language of the executing party.

Plaintiff has responded in good faith by interpreting Defendant's requests reasonably and according to the meaning of the plain language of each request. Plaintiff has made a reasonable inquiry, including a review of documents likely to have information necessary to respond. Discovery is on-going and Plaintiff reserves his right to amend or supplement these Answers accordingly. Additionally, these Answers to Defendant's Interrogatories hereby supplement Plaintiff's initial disclosures (e.g., medical records, damages calculations, medical bills, etc.).

1.      Plaintiff objects to answering Interrogatories that ask for information or communications protected by the attorney-client privilege, or any other applicable privilege.

2.      Plaintiff objects to answering Interrogatories that ask for information which constitutes the work product of counsel on the grounds that such information is protected by the work-product doctrine/privilege, or any other applicable privilege.

3.      Plaintiff objects to answering Interrogatories that are unduly burdensome to the extent that they seek information which:

    a. Defendant has or should have;

    b. Is or will be equally available to Defendant;

    c. Is already known to Defendant or to the extent that they are related to or require the identification of documents, writings, records or publications in the public domain;

d. Requires Plaintiff to perform analysis which can be as easily performed by Defendant;

e. Requires an investigation of or discovery from a non-party.

4.    Plaintiff objects to answering Interrogatories that are vague and ambiguous.

5.    Plaintiff objects to answering Interrogatories that are irrelevant and cannot reasonably be expected to lead to the discovery of relevant evidence.

6.    Plaintiff objects to answering Interrogatories that request information about actions taken or documents created after the commencement of this action that have been created for the purpose of bringing this action.

7.    In submitting these Answers, Plaintiff does not waive any right or objection that may otherwise be available, or concede relevance, competence, materiality, lack of privilege or admissibility into evidence of any document or thing produced.

8.    Plaintiff has not yet completed his investigation of the facts relating to this case, formal discovery or preparation for trial. Consequently, Plaintiff's answers may be incomplete. There is also the possibility that, upon further investigation, these answers may need to be altered or amended. These answers represent Plaintiff's reasonable effort to provide the information requested based on information currently available to him. Plaintiff reserves the right to produce evidence or any subsequent discovered facts or documents, to alter or amend his responses set forth herein, and otherwise to assert factual or legal contentions as additional facts are ascertained.

9.    Plaintiff objects to Defendant's instructions and definitions to the extent that they seek to impose on Plaintiff obligations greater than those set forth in the Federal Rules of Civil Procedure.

10.    Each objection contained in these general objections is hereby incorporated into each and every one of Plaintiff's Answers set forth below.

## ANSWERS

**INTERROGATORY NO. 1:**  Identify all persons who contributed to or provided responsive information to the Interrogatories or Document Requests.

**ANSWER:**  Plaintiff states himself and his attorneys.

**INTERROGATORY NO. 2:**  Identify all Persons you understand at this time to have personal knowledge of the facts material to the Civil Action, and identify the material facts known by each Person, and each Person's name, title, address, and telephone number.

**ANSWER:**  Plaintiff identifies the following persons:

a) Plaintiff;

b) John Doe 6's Mother;

c) John Doe 6's Sister #1;

d) John Doe 6's Sister #2;

e) Minor B. K.;

f) Defendant Gerald Sandusky;

g) Health care providers, including mental health care providers, who have provided care to Plaintiff from May 3, 1998 to the present; and

h) Individuals mentioned and/or listed in the Freeh Report.

Plaintiff reserves the right to supplement this Answer as additional information comes to light during the discovery proceeds in this case.

**INTERROGATORY NO. 3:** Identify all Persons whom you will call as expert witnesses at the Civil Action's trial or from whom you intend to obtain an expert report, and for each such Person, identify each such Person's name, title, address and telephone number, qualifications; all facts, documents and testimony provided to each such Person; and a summary of each such Person's conclusions.

**ANSWER:** Objection. Plaintiff has not fully identified his experts. Without waiving said objections, Plaintiff states that he will identify them in accordance with this Court's Scheduling Order and the United States District Court Rules of Procedure. Each of Plaintiff's experts will be made available for the taking of his/her deposition. Plaintiff reserves the right to supplement this Answer.

**INTERROGATORY NO. 4:** State your full name, current address, and all addresses where you have lived since January 1, 1997.

**ANSWER:** Objection to the extent that this Interrogatory requests private and identifying information concerning this Plaintiff. Since this case is filed under a pseudonym and these Answers to Interrogatories are public in nature or may become public, Plaintiff agrees to provide his Answer to this Interrogatory under separate cover.

**INTERROGATORY NO. 5:** State whether you have ever been arrested, and if you have, state the date, location, and circumstances of each arrest as well as the law enforcement agency involved.

**ANSWER:** None; not applicable.

**INTERROGATORY NO. 6:** State whether you have ever been convicted of a criminal offense punishable by death or imprisonment for more than one year, and, if you have, identify those offense(s), the date(s) of your conviction(s), the prosecuting authority involved, the circumstances that caused you to be convicted, and the sentence(s) you received.

**ANSWER:** None; not applicable.

**INTERROGATORY NO. 7:** Identify each and every Person whom you contend was an agent, servant, and/or employee of the University that observed Sandusky "inappropriately showering with young boys in the Lasch Building (now East Area Locker Building or 'Old Lasch')" prior to May 1998, as alleged in paragraph 18 of the First Amended Complaint.

**ANSWER:**

Plaintiff states that the identity of all such individuals may not be known at this time, as discovery is ongoing in this matter. At this time, Plaintiff identifies the following individuals, including but not limited to, Richard Anderson, Booker Brooks, Jr., and Travis Weaver.

Plaintiff reserves the right to supplement this Answer as discovery continues in this matter.

**INTERROGATORY NO. 8:** Identify and describe in detail all facts and evidence supporting your contention that, prior to the Incident, the University knew Sandusky showered with minor boys and/or was a sexual predator or abuser of minor boys.

**ANSWER:**

Plaintiff refers the Defendant to Answer to Interrogatory No. 7 above. Plaintiff further states, that as noted in the Freeh Report, "[b]efore May 1998, several staff members and football

coaches regularly observed Sandusky showering with young boys in the Lasch Building." The knowledge of an employee is imputed to their employer.

Plaintiff reserves the right to supplement this Answer as discovery continues in this matter.

**INTERROGATORY NO. 9:** Identify and describe in detail all facts and evidence supporting your contention that, prior to the Incident, the University should have known Sandusky showered with minor boys and/or was a sexual predator or abuser of minor boys, and explain the way(s) in which the University should have acquired such knowledge.

**ANSWER:**

Plaintiff refers the Defendant to Answer to Interrogatory No. 8 above and states that as noted in the Freeh Report, "[b]efore May 1998, several staff members and football coaches regularly observed Sandusky showering with young boys in the Lasch Building." The knowledge of an employee is imputed to their employer.

Plaintiff reserves the right to supplement this Answer as discovery continues in this matter.

**INTERROGATORY NO. 10:** Identify and describe in detail all facts and evidence that support your contention in paragraph 98 of the First Amended Complaint that the University knew of and actively concealed "Sandusky's pedophilia" prior to the Incident.

**ANSWER:**

Plaintiff further states, that as noted in the Freeh Report, "[b]efore May 1998, several staff members and football coaches regularly observed Sandusky showering with young boys in the Lasch Building." The knowledge of an employee is imputed to their employer.

Plaintiff reserves the right to supplement this Answer as discovery continues in this matter.

**INTERROGATORY NO. 11:** Identify and explain the "conflicts of interest" to which you refer in paragraph 43 of the First Amended Complaint, and how you believe they impacted you.

**ANSWER:**

Plaintiff states that CYS had various contracts with The Second Mile, including placement of children in a Second Mile residential program; The Second Mile's executive director had a contract with CYS to conduct children's evaluations; and the initial referral sheet from Alycia Chambers, indicated the case might involve a foster child. Defendant's investigation of John Doe 6's sexual molestation, including but not limited to the conflicts of interest that arose and their impact on Plaintiff will be the subject of expert testimony. Plaintiff will identify expert witnesses in accordance with this Court's Scheduling Order and the Rules of Procedure. Upon request, Plaintiff's experts will be made available for deposition and their opinions can be explored at that time. Plaintiff reserves the right to supplement this Answer.

**INTERROGATORY NO. 12:** Identify and explain, with precision, what you believe the University did incorrectly in investigating the Incident and/or speaking with or interviewing you after the Incident, and what you believe the University should have done differently.

**ANSWER:** Objection. This Interrogatory calls for the testimony of expert witness(es). Without waiving said objections, Plaintiff states that he has not fully identified his experts but will identify them in accordance with this Court's Scheduling Order and the United States District Court Rules of Procedure. Each of his experts will be made available for the taking of his/her deposition. Plaintiff reserves the right to supplement this Answer.

**INTERROGATORY NO. 13:** Identify and describe in detail all "inappropriate investigation techniques" to which you refer in paragraph 48 of the First Amended Complaint.

    **ANSWER:** Objection. This Interrogatory calls for the testimony of expert witness(es). Without waiving said objections, Plaintiff states that he has not fully identified his experts but will identify them in accordance with this Court's Scheduling Order and the United States District Court Rules of Procedure. Each of his experts will be made available for the taking of his/her deposition. Plaintiff reserves the right to supplement this Answer.

**INTERROGATORY NO. 14:** Identify and describe in detail each and every unpermitted, harmful, and offensive sexual conduct and contact that you contend occurred between Sandusky and John Doe 6 after the Incident; the date of such conduct and/or contact; and the geographic location of such conduct and/or contact.

    **ANSWER:** Objection. This Interrogatory is overbroad and unduly burdensome. Without waiving said objections, Plaintiff states that he is presently unable to recall, with specificity, the all of the dates on which he subsequently had contact with Defendant Sandusky after the May 3, 1998 incident. Plaintiff was in the presence of Defendant Sandusky while attending football games and on several occasions over the ensuing years. Interactions with the

Plaintiff, which were initiated by Defendant Sandusky during that time, consisted of actions meant to intimidate the Plaintiff who was an impressionable minor child at the time.

**INTERROGATORY NO. 15:** Identify and describe in detail all facts and evidence that support your contention in paragraph 101 of the First Amended Complaint that "Sandusky's sexual misconduct was ratified by" the University.

    **ANSWER:**

    Plaintiff states that he is in the process of obtaining the requested information, as discovery is in its early stages at the present time and is ongoing. Plaintiff further states that Defendant Penn State concealed Sandusky's pattern of inappropriate contact with minor boys, misrepresented the degree of danger he posed, and affirmatively held him out to the public as a dependable and respected member of the Penn State Faculty. Following his retirement from Penn State, and despite Penn State's knowledge of Sandusky's sexual attraction to young boys, Penn State openly and actively promoted Sandusky to the public at large as a dependable and respected member of the Penn State community, and maintained an ongoing special public relationship with Sandusky. Penn State officials conferred upon Sandusky "emeritus" status, a position what would enhance Sandusky's stature, reputation, and credibility. Plaintiff reserves the right to supplement this Answer as additional information comes to light during the discovery.

**INTERROGATORY NO. 16:** Identify and describe in detail all facts and evidence that you contend support your assertion that the University and Sandusky agreed and/or combined to

unlawfully conceal the Incident and the way(s) in which you contend such agreement and/or combination harmed and caused damages to you.

**ANSWER:**

Objection to the extent that this Interrogatory calls for the testimony of expert witness(es). Without waiving said objections, Plaintiff states that he will identify his expert witnesses in accordance with this Court's Scheduling Order and the Rules of Procedure. Upon request, Plaintiff's experts will be made available for deposition and their opinions can be explored at that time.

In further answer, Plaintiff states that Defendant Penn State failed to report Sandusky to law enforcement, child welfare, and/or public health authorities despite having the reason to know, and having actual knowledge, that he was a pedophile who had sexually assaulted and abused children on Penn State premises prior to 1998, and despite having the knowledge of the significant risk of serious physical harm that Sandusky posed to children left in his care or custody. Defendant Penn State did not act is an adequate and timely manner to disclose to the population served by The Second Mile that Sandusky was a pedophile who had sexually assaulted children on Penn State premises and failed to disclose those facts that demonstrated Sandusky was a pedophile who was likely to sexually assault children.

Defendant Penn State did not properly investigate incidents in which Sandusky was reportedly in the company of children in inappropriate settings, such as in the Lasch Building showers. It did not timely and adequately alert The Second Mile's membership to the dangers posed by Sandusky and continued to allow Sandusky and/or The Second Mile under Sandusky's supervision to use Penn State premises or facilities for events and/or private unsupervised inappropriate encounters with adolescent boys.

Despite Defendant Penn State, having actual knowledge that Sandusky was a sociopath, a pedophile, and/or a danger to children, publically expressed support for Sandusky and did not supervise or monitor him while he was on Penn State premises, and failed to put in place proper safeguards for whistle-blowers who would otherwise be reluctant to report improper conduct by athletic officials or other persons in positions of authority.

Instead, Defendant Penn State represented to the public, in general, and The Second Mile, in particular, that Sandusky was a dependable and trustworthy member of the Penn State faculty. It did not restrict, limit, or prevent Sandusky's access to Penn State facilities. Defendant Penn State did not report Sandusky's sexual misconduct as required by Pennsylvania and Federal statutory law. Additionally, it knowingly and deliberately failed to disclose to the public in general, and The Second Mile in particular, information concerning Sandusky's dangerous sociopathic behavior.

Defendant Penn State also provided financial, material, and public support for The Second Mile despite knowing or having reason to know that Sandusky was using the charity as a source of victims. It turned a blind eye to Sandusky's wrongful, tortious and illegal conduct as it related to adolescent boys on Penn State premises and elsewhere.

Further Defendant Penn State remained silent in the face of allegations by Sandusky and his representatives that called into question the veracity of the Plaintiff as it related to the charges against Sandusky for sexually abusing him and it concealed the events that were the subject of PSU's 1998 investigation that arose out of Defendant Sandusky molesting Plaintiff by misidentifying the investigation as an administrative matter, failing to identify Sandusky as a potential perpetrator on the face page of the report, and through other means. Plaintiff was

subjected to an abusive and coercive investigation of him, as victim, rather than conducting a thorough investigation of his assailant.

Plaintiff states that discovery is in its early stages at the present time and is ongoing and reserves the right to supplement this Answer as discovery proceeds in this matter.

**INTERROGATORY NO. 17:** Identify and describe in detail all facts and evidence that you contend support your assertion that the University and Sandusky agreed and/or combined to unlawfully conceal that Sandusky sexually abused and/or showered with minor boys prior to 1998 and the way(s) in which you contend such agreement and/or combination harmed and caused damages to you.

**ANSWER:**

Objection to the extent that this Interrogatory calls for the testimony of expert witness(es). Without waiving said objections, Plaintiff states that he will identify his expert witnesses in accordance with this Court's Scheduling Order and the Rules of Procedure. Upon request, Plaintiff's experts will be made available for deposition and their opinions can be explored at that time.

In further answer, Plaintiff states that Defendant Penn State failed to report Sandusky to law enforcement, child welfare, and/or public health authorities despite having the reason to know, and having actual knowledge, that he was a pedophile who had sexually assaulted and abused children on Penn State premises prior to 1998, and despite having the knowledge of the significant risk of serious physical harm that Sandusky posed to children left in his care or custody. Defendant Penn State did not act is an adequate and timely manner to disclose to the population served by The Second Mile that Sandusky was a pedophile who had sexually

assaulted children on Penn State premises and failed to disclose those facts that demonstrated Sandusky was a pedophile who was likely to sexually assault children.

Defendant Penn State did not properly investigate incidents in which Sandusky was reportedly in the company of children in inappropriate settings, such as in the Lasch Building showers. It did not timely and adequately alert The Second Mile's membership to the dangers posed by Sandusky and continued to allow Sandusky and/or The Second Mile under Sandusky's supervision to use Penn State premises or facilities for events and/or private unsupervised inappropriate encounters with adolescent boys.

Despite Defendant Penn State having actual knowledge that Sandusky was a sociopath, a pedophile, and/or a danger to children, it publically expressed support for Sandusky and did not supervise or monitor him while he was on Penn State premises, and failed to put in place proper safeguards for whistle-blowers who would otherwise be reluctant to report improper conduct by athletic officials or other persons in positions of authority.

Instead, Defendant Penn State represented to the public, in general, and The Second Mile, in particular, that Sandusky was a dependable and trustworthy member of the Penn State faculty. It did not restrict, limit, or prevent Sandusky's access to Penn State facilities. Defendant Penn State did not report Sandusky's sexual misconduct as required by Pennsylvania and Federal statutory law. Additionally, it knowingly and deliberately failed to disclose to the public in general, and The Second Mile in particular, information concerning Sandusky's dangerous sociopathic behavior.

Defendant Penn State also provided financial, material, and public support for The Second Mile despite knowing or having reason to know that Sandusky was using the charity as a

source of victims. It turned a blind eye to Sandusky's wrongful, tortious and illegal conduct as it related to adolescent boys on Penn State premises and elsewhere.

Further Defendant Penn State remained silent in the face of allegations by Sandusky and his representatives that called into question the veracity of the Plaintiff as it related to the charges against Sandusky for sexually abusing him and it concealed the events that were the subject of PSU's 1998 investigation that arose out of Defendant Sandusky molesting Plaintiff by misidentifying the investigation as an administrative matter, failing to identify Sandusky as a potential perpetrator on the face page of the report, and through other means. Plaintiff was subjected to an abusive and coercive investigation of him, as victim, rather than conducting a thorough investigation of his assailant.

Plaintiff states that discovery is in its early stages at the present time and is ongoing and reserves the right to supplement this Answer as discovery proceeds in this matter.


**INTERROGATORY NO. 18:** Identify and describe in detail all facts and evidence that you contend support your assertion that the University and Sandusky agreed and/or combined to unlawfully conceal that Sandusky engaged in an ongoing course of abusive behavior toward John Doe 6 after the Incident and the way(s) in which you contend such agreement and/or combination harmed and caused damages to John Doe 6.

**ANSWER:**

Objection to the extent that this Interrogatory calls for the testimony of expert witness(es). Without waiving said objections, Plaintiff states that he will identify his expert witnesses in accordance with this Court's Scheduling Order and the Rules of Procedure. Upon

request, Plaintiff's experts will be made available for deposition and their opinions can be explored at that time.

In further answer, Plaintiff states that Defendant Penn State failed to report Sandusky to law enforcement, child welfare, and/or public health authorities despite having the reason to know, and having actual knowledge, that he was a pedophile who had sexually assaulted and abused children on Penn State premises prior to 1998, and despite having the knowledge of the significant risk of serious physical harm that Sandusky posed to children left in his care or custody. Defendant Penn State did not act is an adequate and timely manner to disclose to the population served by The Second Mile that Sandusky was a pedophile who had sexually assaulted children on Penn State premises and failed to disclose those facts that demonstrated Sandusky was a pedophile who was likely to sexually assault children.

Defendant Penn State did not properly investigate incidents in which Sandusky was reportedly in the company of children in inappropriate settings, such as in the Lasch Building showers. It did not timely and adequately alert The Second Mile's membership to the dangers posed by Sandusky and continued to allow Sandusky and/or The Second Mile under Sandusky's supervision to use Penn State premises or facilities for events and/or private unsupervised inappropriate encounters with adolescent boys.

Despite Defendant Penn State having actual knowledge that Sandusky was a sociopath, a pedophile, and/or a danger to children, it publically expressed support for Sandusky and did not supervise or monitor him while he was on Penn State premises, and failed to put in place proper safeguards for whistle-blowers who would otherwise be reluctant to report improper conduct by athletic officials or other persons in positions of authority.

Instead, Defendant Penn State represented to the public, in general, and The Second Mile, in particular, that Sandusky was a dependable and trustworthy member of the Penn State faculty. It did not restrict, limit, or prevent Sandusky's access to Penn State facilities. Defendant Penn State did not report Sandusky's sexual misconduct as required by Pennsylvania and Federal statutory law. Additionally, it knowingly and deliberately failed to disclose to the public in general, and The Second Mile in particular, information concerning Sandusky's dangerous sociopathic behavior.

Defendant Penn State also provided financial, material, and public support for The Second Mile despite knowing or having reason to know that Sandusky was using the charity as a source of victims. It turned a blind eye to Sandusky's wrongful, tortious and illegal conduct as it related to adolescent boys on Penn State premises and elsewhere.

Further Defendant Penn State remained silent in the face of allegations by Sandusky and his representatives that called into question the veracity of the Plaintiff as it related to the charges against Sandusky for sexually abusing him and it concealed the events that were the subject of PSU's 1998 investigation that arose out of Defendant Sandusky molesting Plaintiff by misidentifying the investigation as an administrative matter, failing to identify Sandusky as a potential perpetrator on the face page of the report, and through other means. Plaintiff was subjected to an abusive and coercive investigation of him, as victim, rather than conducting a thorough investigation of his assailant.

Plaintiff states that discovery is in its early stages at the present time and is ongoing and reserves the right to supplement this Answer as discovery proceeds in this matter.

**INTERROGATORY NO. 19:** State whether you obtained a copy of any documents from the Police Department's criminal investigation file of the Incident, and, if you have, identify and describe the documents obtained, how you obtained them, and with whom you have shared such documents.

**ANSWER:** Objection. This Interrogatory calls for attorney work product. Without waiving said objection, counsel for Plaintiff obtained documents relative to this Interrogatory from NBC. Specifically, Plaintiff obtained a Department of University Safety-Incident Report 41-98-1609 (15 pages), Childline Report of Suspected Child Abuse and Neglect (2 pages), Letter & Report of Alycia Chambers (3 pages), Department of University Safety Police Services Property Report (1 page), Report of Suspected Child Abuse (1 page), Report of John Seasock (5 pages Incomplete), Unidentifiable page (1 page), Interview of John Doe 6 (5/4/98, 11:25 a.m.) (11 page), Interview of John Doe 6 (5/4/98, 9:30 p.m.) (22 page), Interview of B.K. (25 pages) (5/4/98, 8:10 p.m.) Plaintiff reserves the right to supplement this Answer as discovery continues.

**INTERROGATORY NO. 20:** Identify each and every position of employment you have held since attaining age 18, and for each position, state the name and address of the employer, the name and title of your last supervisor, and the dates you were employed.

**ANSWER:** Plaintiff is presently in between jobs and is not currently employed. His most recent employer was Barnes & Noble in Colorado Springs, CO where he worked from approximately the autumn of 2010 until December of 2013. Plaintiff reserves the right to supplement this Answer.

**INTERROGATORY NO. 21:** For each cause of action asserted in the First Amended Complaint, identify and describe in detail the damages alleged to have been suffered by John Doe 6, including providing an itemized listing of damages by category, the amount(s) by category, and the alleged basis for those damages; and any and all medical and/or psychological services providers who treated John Doe 6 for any condition related to any of the damages identified.

**ANSWER:**

Plaintiff has experienced considerable and ongoing adverse psychological and social consequences of his sexualized experience with Sandusky, Sandusky's several calls to him and attempts to be alone with him over the ten days following the incident of May 3, 1998, and being subjected to an investigation of those events that was at best incompetent and at worst designed to suppress the truth of what had happened and how those experiences had negatively affected him. Those events were psychologically traumatic to Plaintiff, in several ways, including but not limited to:

- Plaintiff strongly felt that it was "weird" and wrong to be manipulated into taking a shower with Sandusky—at the time a 54 year old man that Plaintiff barely knew but greatly admired, and even idolized.

- Plaintiff strongly felt that it was "weird" and wrong to be "bear hugged" in the shower by Sandusky and to have his naked body held against Sandusky's naked body under the pretext of helping him rinse the shampoo out of his hair.

- Plaintiff was terrified that he would get into trouble for telling his mother, his therapist, the police, the investigators at Children and Youth Services, and Mr.

Seasock what Sandusky actually did to him and how it made him feel a the time and afterward.

- Plaintiff was terrified that Sandusky would be harmed if he told the truth about what Sandusky had done to him, about how he felt about those experiences, and about how those experiences affected him, both as they occurred and as he was being questioned by investigators and Mr. Seasock.

- Plaintiff was questioned during the investigation in ways that were completely at odds with how such investigations are supposed to be conducted and that greatly exacerbated his already extreme fear of causing harm to Sandusky if he told the truth about what had happened with Sandusky; how he felt about those experiences as they happened; how he felt about those experiences while he was being questioned by investigators; and how he felt about the way the investigators were questioning him (i.e., in ways that increased his fear of getting himself in trouble, and increased his fear of causing Sandusky harm, that made him feel as if *he* were being treated like a criminal, and that made him feel the investigators had a plan and expectations of how he should answer their questions but were not being open or clear about either, leaving him feeling even more confused and afraid.)

Mr. Miller and Mr. Seasock were at least as traumatic and harmful to Plaintiff at the time, and in terms of long-terms effects, more harmful to Plaintiff than the sexualized behavior of Sandusky. The manipulative, invalidating and intimidating ways that Mr. Miller and Mr. Seasock treated Plaintiff in their interviews with him greatly decreased Plaintiff's ability to trust in his own valid perceptions of Sandusky's sexualized behavior and the manipulative,

invalidating and intimidating behaviors of Mr. Miller and Mr. Seasock; and get the professional help he needed in order to deal with the traumatic impacts of the abusive behavior to which he was subjected by Sandusky and by Mr. Miller and Mr. Seasock in the course of the investigation conducted by Penn State University Police.

Plaintiff has suffered for the past fifteen years and will continue to suffer into the foreseeable future from (1) symptoms of depression, anxiety, posttraumatic stress, and obsessions and compulsions; and (2) extreme difficulties with trusting people and forming and maintaining close or intimate relationships. Plaintiff currently suffers from major depression, posttraumatic stress, and social phobia. He has symptoms of major depression include significant weight loss not due to dieting (e.g., he has to force himself to eat); insomnia, extremely low energy, feeling worthless and wracked with guilt, and lessened abilities to think, concentrate, and make decisions. Plaintiff has symptoms of social phobia include fears of speaking or eating in front others. Plaintiff also suffers from compulsive symptoms that appear linked to the traumatic sexual abuse by Sandusky (for example, taking three to five showers a day, lasting up to 40 minutes each). Plaintiff's symptoms of posttraumatic stress disorder are pervasive in his daily life. Although such symptoms have gone up and down since January of 2011, when he first learned of the investigation that led to Sandusky's criminal trial, such symptoms have always been prominent and debilitating, including currently. Plaintiff re-experiences physical reactions when something reminds him of the sexual abuse or how he felt during the interviews of the 1998 investigation. He suffers from avoidance and numbing symptoms of attempting to avoid unwanted memories of Sandusky and the 1998 investigation interviews. Additionally, he experienced a decreased interest in activities he used to enjoy

prior to learning of the charges against Sandusky in 2011 and has a severe sense of feeling distant and cutoff from other people and emotionally numb.

**INTERROGATORY NO. 22:** Identify the names and addresses of all medical, mental health, or other providers with which you have treated from birth to the present.

　　　**ANSWER:** Objection. This Interrogatory is overly broad, unduly burdensome, and requests information that is not relevant and will not lead to the discovery of admissible evidence. Without waiving said objections, Plaintiff states that he has seen numerous providers and directs the Defendant to Health Care Providers listed below and to the medial records attached to these Answers.

- Geisinger Health System
- Sun Pointe Health

**INTERROGATORY NO. 23:** Identify whether you plan to move from your current address within the next two (2) years, and if so, where.

　　　**ANSWER:** Plaintiff does not presently have any plans to move from his current address within the next two years, but reserves the right to supplement this Answer should additional and/or new information become available prior to the trial of this matter.

**INTERROGATORY NO. 24:** State whether you have had any contact with Freeh Sporkin & Sullivan and, if so, identify and explain when, the nature of the contact, and any and all communications or documents shared with Freeh Sporkin & Sullivan.

**ANSWER:** Objection. This Interrogatory calls for privileged information and attorney work product. Without waiving said objection, Plaintiff states no. Plaintiff reserves the right to supplement this Answer prior to the trial of this matter.

**INTERROGATORY NO. 25:** Identify and describe in detail all communications you have had with Sandusky since May 3, 1998.

**ANSWER:** Objection. This Interrogatory is overly broad and unduly burdensome. Without waiving said objections, Plaintiff states that it is too difficult for him to recall with specificity the information requested in this Interrogatory. Plaintiff had subsequently contact and/or was in the general presence of Defendant Sandusky after May 3, 1998, due to the fact that he attended Penn State football games and other activities sponsored by The Second Mile organization. See also Answer to Interrogatory No. 14.

Plaintiff reserves the right to supplement this Answer should additional information responsive to this Interrogatory come to light prior to the trial of this matter.

## VERIFICATION

I hereby affirm, under the penalties of perjury, that the foregoing is based on my personal knowledge, and is true and correct to the best of my knowledge, information and belief.

Dated: April __3__ , 2014.

_____
John Doe 6

By:

_____/s/ Jason B. Penn_____
Howard A. Janet, Esquire
(Pro Hac Vice)
Kenneth M. Suggs, Esquire
(Pro Hac Vice)
Jason B. Penn, Esquire
(Pro Hac Vice)
Janet, Jenner & Suggs, LLC
1777 Reisterstown Road, Suite 165
Baltimore, MD 21208
410-653-3200
410-653-9030 (fax)
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this 4th day of April, 2014, I have served the

foregoing Plaintiff John Doe 6's Answer to Interrogatories of Defendant The Pennsylvania State

University on the following counsel of record via electronic mail and first class mail.

James A. Keller, Esquire
Joseph F. O'Dea, Esquire
Joshua W.B. Richards, Esquire
Saul Ewing, LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
*Counsel for the Pennsylvania State University*

Charles J. Benjamin, Jr., Esquire
Joshua H. Roberts, Esquire
McCarter & English
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
*Counsel for Gerald Sandusky*

Howard A. Rosenthal, Esquire
Patrick J. Doran, Esquire
Archer & Greiner, P.C.
One Liberty Place, 32nd Floor
1650 Market Street
Philadelphia, PA 19103
*Counsel for The Second Mile*

Bryan C. McElvaine, Esquire
Campbell Campbell Edwards & Conroy
1205 Westlakes Drive, Suite 330
Berwyn, PA 19312
*Counsel for The Second Mile*

_____/s/ Jason B. Penn_____

# EXHIBIT
# D

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN DOE 6<br>c/o Janet, Jenner & Suggs, LLC<br>1777 Reisterstown Road<br>Commerce Center East, Suite 165<br>Baltimore, Maryland 21208<br><br>PLAINTIFF<br>v.<br><br>THE PENNSYLVANIA STATE UNIVERSITY<br>201 Old Main<br>University Park, PA 16802<br><br>and<br><br>THE SECOND MILE<br>1402 South Atherton St.<br>State College, PA 16081<br><br>and<br><br>GERALD SANDUSKY<br>130 Grandview Road<br>State College, PA 16801-7011,<br>Individually and in his official capacity for<br>The Second Mile<br><br>DEFENDANTS | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION<br><br><br><br><br><br><br>No. 2:13-cv-000336-AB<br><br><br><br><br><br>JURY TRIAL DEMANDED |

## PLAINTIFF JOHN DOE 6'S RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENTS OF DEFENDANT THE PENNSYLVANIA STATE UNIVERSITY

Plaintiff, John Doe 6 by and through his attorneys, submits the following Responses to Defendant, Pennsylvania State University's, First Set of Requests for Production of Documents to Plaintiff, pursuant to Fed. R. Civ. P. 34, as follows:

## GENERAL OBJECTIONS

The information supplied in these Responses is not based solely on the knowledge of the executing parties but includes the knowledge of the parties' agents, representatives, and

attorneys, unless privileged. These Responses are drafted by counsel and their word usage and sentence structure are that of counsel and do not purport to be the exact language of the executing parties.

Plaintiff has responded in good faith by interpreting Defendant's requests reasonably and according to the meaning of the plain language of each request. Plaintiff has made a reasonable inquiry, including a review of documents likely to have information necessary to respond. Discovery is on-going and Plaintiff reserves his right to amend or supplement these Responses accordingly. Additionally, these Responses to Defendant's Requests for Production hereby supplement Plaintiff's initial disclosures (e.g., medical records, damages calculations, medical bills, etc.).

1.     Plaintiff objects to responding to Requests that ask for information or communications protected by the attorney-client privilege, or any other applicable privilege.

2.     Plaintiff objects to responding to Requests that ask for information which constitutes the work product of counsel on the grounds that such information is protected by the work-product doctrine/privilege, or any other applicable privilege.

3.     Plaintiff objects to responding to Requests that are unduly burdensome to the extent that they seek information which:

   a.  Defendant has or should have;

   b.  Is or will be equally available to Defendant;

   c.  Is already known to Defendant or to the extent that they are related to or require the identification of documents, writings, records or publications in the public domain;

d. Requires Plaintiff to perform analysis which can be as easily performed by Defendant;

e. Requires an investigation of or discovery from a non-party.

4. Plaintiff objects to responding to Requests that are vague and ambiguous.

5. Plaintiff objects to responding to Requests that are irrelevant and cannot reasonably be expected to lead to the discovery of relevant evidence.

6. Plaintiff objects to responding to Requests that ask for information about actions taken or documents created after the commencement of this action that have been created for the purpose of bringing this action.

7. In submitting these Responses, Plaintiff does not waive any right or objection that may otherwise be available, or concede relevance, competence, materiality, lack of privilege or admissibility into evidence of any document or thing produced.

8. Plaintiff has not yet completed their investigation of the facts relating to this case, formal discovery or preparation for trial. Consequently, Plaintiff's responses may be incomplete. There is also the possibility that, upon further investigation, these responses may need to be altered or amended. These responses represent Plaintiff's reasonable effort to provide the information requested based on information currently available to them. Plaintiff reserves the right to produce evidence or any subsequent discovered facts or documents, to alter or amend their responses set forth herein, and otherwise to assert factual or legal contentions as additional facts are ascertained.

9. Plaintiff objects to Defendant's instructions and definitions to the extent that they seek to impose on Plaintiffs obligations greater than those set forth in the Federal Rules of Civil Procedure.

10.    Each objection contained in these general objections is hereby incorporated into each and every one of Plaintiff's Responses set forth below.

## RESPONSES

### REQUEST NO. 1:

Any and all documents that refer to, relate to, or are otherwise identified or relied upon by you in any of your answers to, or in answering, the Interrogatories.

### RESPONSE:

Plaintiff will provide a disk of medical records upon execution of an appropriate protective order.  Plaintiff also directs the Defendant to the *Report of the Special Investigative Counsel Regarding the Actions of The Pennsylvania State University Related to the Child Sexual Abuse Committed by Gerald A. Sandusky*, dated July 12, 2012 and prepared by Freeh Sporkin & Sullivan, LLP (commonly known as, and hereinafter referred to as "The Free Report").

Discovery is ongoing in this matter and Plaintiff reserves the right to supplement this Response as additional documents relative to this matter become known and made available to Plaintiff.

### REQUEST NO. 2:

Any and all documents that relate to or support your First Amended Complaint and the allegations made therein.

### RESPONSE:

See Response to Request No. 1 above.  Plaintiff also possesses the following documents which will be provided upon execution of an appropriate protective order:

- Department of University Safety Incident Report of Ronald Schreffler
- Childline Report of Suspected Child Abuse and Neglect of E. Jayne Ripton

- Letter and Report of Alycia A. Chambers, Ph.D.
- Report of Jerry Lauro from Department of Public Welfare to the District Attorney's Office dated May 5, 1998
- Partial report of John Seasock of Renaissance Psychological Corporation
- Transcribed Interviews of John Doe 6 of May 4, 1998 at 11:25 a.m. and 9:30 p.m.
- Interview of B.K. of May 4, 1998 at 8:10 p.m.

Plaintiff reserves the right to supplement this Response as discovery is ongoing in this matter.

## REQUEST NO. 3:

Any and all documents you intend to rely on or use for any purpose at trial.

## RESPONSE:

Objection. Plaintiff objects to this Request on the grounds that it is overly broad, unduly burdensome, and not properly limited in time or scope. Furthermore, it violates the attorney work product privilege. Without waiving any of the foregoing objections, Plaintiff is continuing to investigate this matter and discovery is in its early stages. Plaintiff has not identified the documents he intends to use during his case in chief at the trial of this matter and will supplement this Response in accordance with the Federal Rules of Procedure and this Court's Scheduling Order.

## REQUEST NO. 4:

Any and all documents that support, relate or evidence in any way the damages alleged to have been suffered by John Doe 6.

## RESPONSE:

Objection. Plaintiff objects to this Request on the grounds that it is overly broad, unduly burdensome, and not properly limited in time or scope. Plaintiff further objections to the extent that this Request calls for expert testimony. Without waiving any of the foregoing objections, Plaintiff states that he is in the process of obtaining the requested documentation and will supplement this Response as documents responsive to this Request become known and made available to him and/or his counsel. Additionally, Plaintiff will identify said experts in accordance with the Federal Rules of Procedure and in accordance with this Court's Scheduling Order, and will make said experts available for the taking of their depositions.

Plaintiff reserves the right to supplement this Response.


## REQUEST NO. 5:

Any and all documents that support your contention, in paragraph 12 of the First Amended Complaint, that the University "granted Sandusky unfettered access to its facilities, including but not limited to its weight rooms, training rooms, offices, and showers."

## RESPONSE:

Discovery is in its earliest stages in this case. Plaintiff's attempts to discovery documents responsive to this request have been thwarted. Plaintiff directs the Defendant to the Freeh Report and its attachments. Plaintiff reserves the right to supplement this Response as discovery proceeds in this matter and as additional documents responsive to this Request are indentified.


## REQUEST NO. 6:

Any and all documents that relate to or support the alleged "social and financial relationship" between the University, Sandusky, and Second Mile, as averred in paragraph 14 of the First Amended Complaint.

**RESPONSE:**

Discovery is in its earliest stages in this case. Plaintiff's attempts to discovery documents responsive to this request have been thwarted. Plaintiff directs the Defendant to the Freeh Report and its attachments. Plaintiff reserves the right to supplement this Response as discovery proceeds in this matter and as additional documents responsive to this Request are indentified.

**REQUEST NO. 7:**

Any and all documents related to the Incident.

**RESPONSE:**

Objection. Plaintiff objects to this Request on the grounds that it is overly broad, unduly burdensome, and not properly limited in time or scope. Without waiving any of the foregoing objections, Plaintiff directs the Defendant to all documents produced in this case to date. Discovery is in its early stage and is ongoing in this matter. Plaintiff reserves the right to supplement this Response as discovery proceeds in this case.

**REQUEST NO. 8:**

Any and all documents related to the University's and/or Police Department's investigation of the Incident or your investigation of the Incident, whether in 1998 or subsequently.

**RESPONSE:**

See Response to Request No. 2 above. Plaintiff reserves the right to supplement this Response should additional documentation become available during the discovery process in this matter.

**REQUEST NO. 9:**

Any and all documents related to communications between (a) Sandusky and (b) John Doe 6 and/or John Doe 6's mother before or after the Incident.

**RESPONSE:**

Plaintiff directs the Defendant to the Freeh Report and its attachments. Plaintiff is endeavoring to locate any communications between Sandusky and John Doe 6 and/or his mother. Plaintiff reserves the right to supplement this Response if and when additional relevant materials are identified as discovery proceeds in this matter.

**REQUEST NO. 10:**

Any and all documents related to or containing statements or testimony made by John Doe 6 or his mother related to or describing the Incident or the University's investigation thereof.

**RESPONSE:**

Plaintiff directs the Defendant to the PSU police investigation, which is already in the possession of the Defendant. Plaintiff also refers Defendant to the testimony of John Doe 6 in the criminal trial of Gerald Sandusky.

Plaintiff reserves the right to supplement this Response as discovery proceeds in this matter.

**REQUEST NO. 11:**

Any and all documents that relate to or support your contention that prior to the Incident, the University knew or should have known that Sandusky showered with minor boys and/or was a sexual predator or abuser of minor boys, as alleged in paragraphs 18, 22, 23, 24, and 99 of the First Amended Complaint.

**RESPONSE:**

Discovery is in its earliest stages in this case. Plaintiff's attempts to discovery documents responsive to this request have been thwarted. Plaintiff directs the Defendant to the Freeh Report and its attachments. Plaintiff reserves the right to supplement this Response as discovery proceeds in this matter and as additional documents responsive to this Request are indentified.

**REQUEST NO. 12:**

Any and all documents that relate to or support your contention that prior to the Incident, the University concealed from John Doe 6, his mother, and others the University's knowledge that Sandusky showered with minor boys and/or was a sexual predator or abuser of minor boys, as alleged in paragraphs 21, 22, 32, 82, 83, 98, 99, 104, 141, and 147 of the First Amended Complaint.

**RESPONSE:**

Discovery is in its earliest stages in this case. Plaintiff's attempts to discovery documents responsive to this request have been thwarted. Plaintiff directs the Defendant to the Freeh Report and its attachments. Plaintiff reserves the right to supplement this Response as discovery proceeds in this matter and as additional documents responsive to this Request are indentified.

**REQUEST NO. 13:**

Any and all documents related to the Incident and/or the University's investigation thereof exchanged between the following: John Doe 6 or his mother; John Doe 6 and any other party, including any media entity, and prospective attorney who was not retained, or any friends or relatives; the University; the Police Department; Sandusky; Second Mile; the State College Police Department; Alycia Chambers, Ph.D.; the Attorney General's Office of the Commonwealth of Pennsylvania; Centre County Children and Youth Services; and/or the District Attorney's Office of Centre County, Pennsylvania.

**RESPONSE:**

Plaintiff directs the Defendant to the PSU police investigation, which is already in the possession of the Defendant. Plaintiff also refers Defendant to the testimony of John Doe 6 in the criminal trial of Gerald Sandusky.

Plaintiff reserves the right to supplement this Response as discovery proceeds in this matter.

**REQUEST NO. 14:**

Any and all medical and mental health records, including any documents related to John Doe 6's meeting with Alycia Chambers, Ph.D., as alleged in paragraph 42 of the Complaint.

**RESPONSE:**

A disk containing the medical records of Plaintiff that are currently in the possession of Plaintiff and /or his counsel will be produced in connection with this Response to Request for

Production and Plaintiff's Answers to Interrogatories filed contemporaneously herewith, upon execution of an appropriate protective order.

Plaintiff reserves the right to supplement this Response as and if additional documents relative to this request become available.

**REQUEST NO. 15:**

Any and all documents related to and/or describing the "conflicts of interest" alleged in paragraph 44 of the Complaint.

**RESPONSE:**

Discovery is in its earliest stages in this case. Plaintiff's attempts to discovery documents responsive to this request have been thwarted. Plaintiff directs the Defendant to the Freeh Report and its attachments. Plaintiff reserves the right to supplement this Response as discovery proceeds in this matter and as additional documents responsive to this Request are indentified.

**REQUEST NO. 16:**

Any and all documents related to and/or describing the "procedures and methodology" alleged in paragraph 45 of the Complaint.

**RESPONSE:**

Objection. Plaintiff objects to this Request on the grounds that it is overly broad, unduly burdensome, and not properly limited in time or scope. Plaintiff further objects to the extent that this Request calls for expert testimony. Without waiving any of the foregoing objections, Plaintiff states that he is in the process of obtaining the requested documentation and will supplement this Response as documents responsive to this Request become known and made

available to him and/or his counsel. Additionally, Plaintiff will identify said experts in accordance with the Federal Rules of Procedure and in accordance with this Court's Scheduling Order, and will make said experts available for the taking of their depositions.

Plaintiff additionally states that discovery is in its earliest stages in this case. Plaintiff's attempts to discovery documents responsive to this request have been thwarted. Plaintiff directs the Defendant to the Freeh Report and its attachments. Plaintiff reserves the right to supplement this Response as discovery proceeds in this matter and as additional documents responsive to this Request are indentified.


## REQUEST NO. 17:

Any and all documents related to and/or evidencing your contention, in paragraph 45 of the Complaint, that the "re-interview" of John Doe 6 was intimidating and contained "subtle and not so subtle conduct on the part of the interviewers" designed to increase John Doe 6's "concern about being blamed for any trouble that might befall Sandusky as a result of the events being investigated."

## RESPONSE:

Objection. Plaintiff objects to this Request on the grounds that it is overly broad, unduly burdensome, and not properly limited in time or scope. Plaintiff further objects to the extent that this Request calls for expert testimony. Without waiving any of the foregoing objections, Plaintiff states that he is in the process of obtaining the requested documentation and will supplement this Response as documents responsive to this Request become known and made available to him and/or his counsel. Additionally, Plaintiff will identify said experts in

accordance with the Federal Rules of Procedure and in accordance with this Court's Scheduling Order, and will make said experts available for the taking of their depositions.

Plaintiff additionally states that discovery is in its earliest stages in this case. Plaintiff's attempts to discovery documents responsive to this request have been thwarted. Plaintiff directs the Defendant to the Freeh Report and its attachments. Plaintiff reserves the right to supplement this Response as discovery proceeds in this matter and as additional documents responsive to this Request are indentified.

## REQUEST NO. 18:

Any and all documents related to and/or supporting your contention, in paragraph 46 of the Complaint, that "the second interview [of John Doe 6] should not have occurred[,] ... should not have included an unknown second person[,] ... [and that t]he second interview and the introduction of an additional adult investigator created a hostile environment causing direct harm to John Doe 6."

## RESPONSE:

Objection. Plaintiff objects to this Request on the grounds that it is overly broad, unduly burdensome, and not properly limited in time or scope. Plaintiff further objects to the extent that this Request calls for expert testimony. Without waiving any of the foregoing objections, Plaintiff states that he is in the process of obtaining the requested documentation and will supplement this Response as documents responsive to this Request become known and made available to him and/or his counsel. Additionally, Plaintiff will identify said experts in accordance with the Federal Rules of Procedure and in accordance with this Court's Scheduling Order, and will make said experts available for the taking of their depositions.

Plaintiff additionally states that discovery is in its earliest stages in this case. Plaintiff's attempts to discovery documents responsive to this request have been thwarted. Plaintiff directs the Defendant to the Freeh Report and its attachments. Plaintiff reserves the right to supplement this Response as discovery proceeds in this matter and as additional documents responsive to this Request are indentified.

## REQUEST NO. 19:

Any and all documents related to and/or supporting your contention that the University's and/or the Police Department's response to or investigation into the Incident was intimating and abusive toward John Doe 6.

## RESPONSE:

Objection. Plaintiff objects to this Request on the grounds that it is overly broad, unduly burdensome, and not properly limited in time or scope. Plaintiff further objects to the extent that this Request calls for expert testimony. Without waiving any of the foregoing objections, Plaintiff states that he is in the process of obtaining the requested documentation and will supplement this Response as documents responsive to this Request become known and made available to him and/or his counsel. Additionally, Plaintiff will identify said experts in accordance with the Federal Rules of Procedure and in accordance with this Court's Scheduling Order, and will make said experts available for the taking of their depositions.

Plaintiff additionally states that discovery is in its earliest stages in this case. Plaintiff's attempts to discovery documents responsive to this request have been thwarted. Plaintiff directs the Defendant to the Freeh Report and its attachments. Plaintiff reserves the right to supplement

this Response as discovery proceeds in this matter and as additional documents responsive to this Request are indentified.

## REQUEST NO. 20:

Any and all documents related to and/or describing the "inappropriate investigation techniques" alleged in paragraph 48 of the First Amended Complaint.

## RESPONSE:

Objection. Plaintiff objects to this Request on the grounds that it is overly broad, unduly burdensome, and not properly limited in time or scope. Plaintiff further objects to the extent that this Request calls for expert testimony. Without waiving any of the foregoing objections, Plaintiff states that he is in the process of obtaining the requested documentation and will supplement this Response as documents responsive to this Request become known and made available to him and/or his counsel. Additionally, Plaintiff will identify said experts in accordance with the Federal Rules of Procedure and in accordance with this Court's Scheduling Order, and will make said experts available for the taking of their depositions.

Plaintiff additionally states that discovery is in its earliest stages in this case. Plaintiff's attempts to discovery documents responsive to this request have been thwarted. Plaintiff directs the Defendant to the Freeh Report and its attachments. Plaintiff reserves the right to supplement this Response as discovery proceeds in this matter and as additional documents responsive to this Request are indentified.

## REQUEST NO. 21:

Any and all documents related to and/or describing the way in which you believe the University and/or Police Department should have responded to or investigated the Incident.

**RESPONSE:**

Objection. Plaintiff objects to this Request on the grounds that it is overly broad, unduly burdensome, and not properly limited in time or scope. Plaintiff further objects to the extent that this Request calls for expert testimony. Without waiving any of the foregoing objections, Plaintiff states that he is in the process of obtaining the requested documentation and will supplement this Response as documents responsive to this Request become known and made available to him and/or his counsel. Additionally, Plaintiff will identify said experts in accordance with the Federal Rules of Procedure and in accordance with this Court's Scheduling Order, and will make said experts available for the taking of their depositions.

Plaintiff additionally states that discovery is in its earliest stages in this case. Plaintiff's attempts to discovery documents responsive to this request have been thwarted. Plaintiff directs the Defendant to the Freeh Report and its attachments. Plaintiff reserves the right to supplement this Response as discovery proceeds in this matter and as additional documents responsive to this Request are indentified.

**REQUEST NO. 22:**

Any and all documents related to the May 8, 1998 evaluation of John Doe 6 as alleged in paragraph 51 of the First Amended Complaint.

**RESPONSE:**

Objection. Plaintiff objects to this Request on the grounds that it is overly broad, unduly burdensome, and not properly limited in time or scope. Plaintiff further objects to the extent that

this Request calls for expert testimony. Without waiving any of the foregoing objections, Plaintiff states that he is in the process of obtaining the requested documentation and will supplement this Response as documents responsive to this Request become known and made available to him and/or his counsel. Additionally, Plaintiff will identify said experts in accordance with the Federal Rules of Procedure and in accordance with this Court's Scheduling Order, and will make said experts available for the taking of their depositions.

Plaintiff additionally states that discovery is in its earliest stages in this case. Plaintiff's attempts to discovery documents responsive to this request have been thwarted. Plaintiff directs the Defendant to the Freeh Report and its attachments. Plaintiff reserves the right to supplement this Response as discovery proceeds in this matter and as additional documents responsive to this Request are indentified.

## REQUEST NO. 23:

Any and all documents related to and/or describing the University's investigator's belief that "Sandusky's conduct warranted criminal charges" and the "District Attorney's decision not] ... to formally charge Sandusky" as alleged in paragraph 56 of the First Amended Complaint.

## RESPONSE:

Discovery is in its earliest stages in this case. Plaintiff's attempts to discovery documents responsive to this request have been thwarted. Plaintiff directs the Defendant to the Freeh Report and its attachments, as well as the testimony in Sandusky's criminal trial. Plaintiff reserves the right to supplement this Response as discovery proceeds in this matter and as additional documents responsive to this Request are indentified.

**REQUEST NO. 24:**

Any and all documents related to your contentions in paragraphs 57, 105, 116, 122,130, and 149 of the First Amended Complaint, that as a result of the Incident and the University's actions and/or omissions, John Doe 6 has suffered, and continues to suffer, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, been the subject of public ridicule, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; was prevented and will continue to be prevented from performing his daily activities and obtaining the full enjoyment of life; has sustained and will continue to sustain loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

**RESPONSE:**

Objection. Plaintiff objects to this Request on the grounds that it is overly broad, unduly burdensome, and not properly limited in time or scope. Plaintiff further objects to the extent that this Request calls for expert testimony. Without waiving any of the foregoing objections, Plaintiff states that he has not fully identified his expert witnesses but will do so in accordance with the Federal Rules and this Court's Scheduling Order. Plaintiff states that any such experts will be made available for the taking of his/her deposition, including the identification and production of any relevant discoverable information and documents requested above.

Plaintiff reserves the right to supplement this Response as the discovery process continues in this matter.

**REQUEST NO. 25:**

Any and all documents related to and/or in support of your contention, in paragraph 91 of the First Amended Complaint, that the injuries allegedly suffered by John Doe 6 "are expected to be permanent in nature."

**RESPONSE:**

Objection. Plaintiff objects to this Request on the grounds that it is overly broad, unduly burdensome, and not properly limited in time or scope. Plaintiff further objects to the extent that this Request calls for expert testimony. Without waiving said objection, Plaintiff states that he has not fully identified his expert witnesses but will do so in accordance with the Federal Rules and this Court's Scheduling Order. Plaintiff states that any such experts will be made available for the taking of his/her deposition, including the identification and production of any relevant discoverable information and documents requested above.

Plaintiff reserves the right to supplement this Response as the discovery process continues in this matter.


**REQUEST NO. 26:**

Any and all documents related to and/or in support of your contention, in paragraph 135 of the First Amended Complaint, that John Doe 6 "suffered severe emotional distress, including severe mental anguish and horror, because of [the University's] and Second Mile's reckless, extreme and outrageous conduct."

**RESPONSE:**

Objection. Plaintiff objects to this Request on the grounds that it is overly broad, unduly burdensome, and not properly limited in time or scope. Plaintiff further objects to the extent that this Request calls for expert testimony. Without waiving any of the foregoing objections,

Plaintiff states that he has not fully identified his expert witnesses but will do so in accordance with the Federal Rules and this Court's Scheduling Order. Plaintiff states that any such experts will be made available for the taking of his/her deposition, including the identification and production of any relevant discoverable information and documents requested above.

Plaintiff reserves the right to supplement this Response as the discovery process continues in this matter.

## REQUEST NO. 27:

Any and all documents related to and/or in support of your contention, in paragraph 139 of the First Amended Complaint, that the University and Sandusky "agreed and/or combined to unlawfully conceal from the public that Sandusky "showered with young boys prior to 1998."

## RESPONSE:

Discovery is in its earliest stages in this case. Plaintiff's attempts to discovery documents responsive to this request have been thwarted. Plaintiff directs the Defendant to the Freeh Report and its attachments. Plaintiff reserves the right to supplement this Response as discovery proceeds in this matter and as additional documents responsive to this Request are indentified.

## REQUEST NO. 28:

Any and all documents related to and/or in support of your contention, in paragraph 139 of the First Amended Complaint, that the University and Sandusky "agreed and/or combined to unlawfully conceal from the public" that Sandusky sexually abused young boys in a shower prior to 1998.

## RESPONSE:

Discovery is in its earliest stages in this case. Plaintiff's attempts to discovery documents responsive to this request have been thwarted. Plaintiff directs the Defendant to the Freeh Report and its attachments. Plaintiff reserves the right to supplement this Response as discovery proceeds in this matter and as additional documents responsive to this Request are indentified.

## REQUEST NO. 29:

Any and all documents comprising and/or related to John Doe 6's medical and mental health records from birth to the present.

## RESPONSE:

Objection. Plaintiff objects to this Request on the grounds that it is overly broad, unduly burdensome, and not properly limited in time or scope. Plaintiff further objects to the extent that this Request calls for expert testimony. Without waiving any of the foregoing objections, Plaintiff states many of the documents requested no longer exist as typically medical charts are not maintained and preserved by health care providers for a period of time that would encompass the lifespan thus far of the Plaintiff. Additionally, many of the documents requested are irrelevant and are not likely to lead to the discovery of admissible evidence. Without waiving said objection, Plaintiff will provide a disk of medical records upon execution of an appropriate protective order.

Plaintiff reserves the right to supplement this Response as additional records are made available to Plaintiff throughout the discovery process of this matter.

## REQUEST NO. 30:

A copy of documents that you understand to be from the Police Department's criminal investigation file concerning the Incident.

**RESPONSE:**

Plaintiff directs the Defendant to the 1998 Investigation file which will be provided upon execution of an appropriate protective order.

**REQUEST NO. 31:**

Any and all documents that you or your counsel provided to, or received from, any member of the media or third party regarding the Incident, the criminal proceedings against Sandusky, or the allegations in the First Amended Complaint.

**RESPONSE:**

Plaintiff directs the Defendant to the 1998 Investigation file attached hereto.

**REQUEST NO. 32:**

Any and all of your Forms W-2 or Forms 1099 and/or other documents evidencing your income for each year you have filed federal income taxes or earned income.

**RESPONSE:**

Plaintiff is in the process of compiling the requested documents and will supplement this Response when such documents become available.

**REQUEST NO. 33:**

Any and all diplomas you have earned.

**RESPONSE:**

Plaintiff is in the process of compiling copies of the requested documents and will supplement this Response when such documents become available.

## REQUEST NO. 34:

Any and all transcripts from any school you have attended from 1997 to the present.

## RESPONSE:

Plaintiff is in the process of compiling the requested documents and will supplement this Response when such documents become available.

## REQUEST NO. 35:

Any and all expert reports related to any allegation in the First Amended Complaint.

## RESPONSE:

Plaintiff states that he has not fully identified his expert witnesses but will do so in accordance with the Federal Rules and this Court's Scheduling Order. Plaintiff states that any such experts will be made available for the taking of his/her deposition, including the identification and production of any relevant discoverable information, reports, and documents requested above.

Plaintiff reserves the right to supplement this Response as the discovery process continues in this matter.

## REQUEST NO. 36:

Any and all communications you have had with any other individual who claims to have been sexually abused by Sandusky.

**RESPONSE:**

Objection to the extent that this Request calls information protected by the attorney work product. Plaintiffs reserve the right to supplement this Response as the discovery process continues in this matter. At present, plaintiff knows of no written or electronic communications responsive to this request.


**REQUEST NO. 37:**

Any and all documents evidencing your registration for any events organized by, sponsored by, promoted by, or in any way related to Second Mile.

**RESPONSE:**

Plaintiff does not believe he is in possession of any documents relevant to this request as any such documents would be more than approximately fifteen years old and not likely to have been maintained by himself or his family for that period of time.

Plaintiff reserves the right to supplement this Response, however, if any such documents become made known and available to him during the discovery process of this matter.


By:

_____/s/ Jason B. Penn_____
Howard A. Janet, Esquire
(Pro Hac Vice)
Kenneth M. Suggs, Esquire
(Pro Hac Vice)
Jason B. Penn, Esquire
(Pro Hac Vice)
Janet, Jenner & Suggs, LLC
1777 Reisterstown Road, Suite 165
Baltimore, MD 21208

410-653-3200
410-653-9030 (fax)
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this 4th day of April, 2014, I have served the

foregoing Plaintiff John Doe 6's Answer to Interrogatories of Defendant The Pennsylvania State

University on the following counsel of record via electronic mail and first class mail.

James A. Keller, Esquire
Joseph F. O'Dea, Esquire
Joshua W.B. Richards, Esquire
Saul Ewing, LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
*Counsel for the Pennsylvania State University*

Charles J. Benjamin, Jr., Esquire
Joshua H. Roberts, Esquire
McCarter & English
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
*Counsel for Gerald Sandusky*

Howard A. Rosenthal, Esquire
Patrick J. Doran, Esquire
Archer & Greiner, P.C.
One Liberty Place, 32nd Floor
1650 Market Street
Philadelphia, PA 19103
*Counsel for The Second Mile*

Bryan C. McElvaine, Esquire
Campbell Campbell Edwards & Conroy
1205 Westlakes Drive, Suite 330
Berwyn, PA 19312
*Counsel for The Second Mile*

_____/s/ Jason B. Penn_____

CERTIFICATE OF SERVICE

I certify that I have filed the foregoing document with ECF and it is available therein for

download by counsel for all parties, who are ECF subscribers.


                                        _____/s Robert C. Clothier_____
                                        Robert C. Clothier
                                        Attorney for Defendant
                                        The Pennsylvania State University


Date:  February 12 , 2015