

*EXHIBIT "A"*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN DOE 6, | : | |
| Plaintiff | : | CIVIL ACTION |
| v. | : | No. 2:13-cv-000336 |
| THE PENNSYLVANIA STATE UNIVERSITY, THE SECOND MILE, and GERALD SANDUSKY, | : | |
| Defendants. | : | |

## FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS DIRECTED TO PLAINTIFF JOHN DOE 6

Defendant The Pennsylvania State University hereby directs Plaintiff John Doe 6 ("John Doe 6") to respond to the within First Set of Requests for Production of Documents ("Document Requests") pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, which, among other things, require John Doe 6 to update responses to these Document Requests as additional information becomes available and to remedy incorrect or incomplete responses.

The following definitions and instructions apply to each document request unless the context clearly indicates otherwise.

### Definitions

1. "Address" means street address, including, without limitation, apartment or suite number, if applicable, city, state and zip code.

2. "All" means each and every.

3. "All Documents" means every document, whether an original or copy, as defined herein, known to you, and every such document or writing which you can locate or discover by reasonable diligent efforts.

4. "And" means and/or and shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

5. "Any" means any and all.

6. "Civil Action" means the civil action styled and pending as <u>John Doe 6 v. The Pennsylvania State University, The Second Mile, and Gerald Sandusky</u> and docketed in the Court (as defined below) as No. 2:13-cv-000336-AB.

7. "Communication" means any manner or means of disclosure, transfer, or exchange, and any disclosure, transfer or exchange of information whether orally or by document, or whether face-to-face, by telephone, mail or personal delivery.

8. "Complaint" means the First Amended Complaint filed in the Civil Action by Plaintiff (as defined below).

9. "Concerning" means referring to, alluding to, responding to, related to, connected with, commenting upon, in respect of, about, regarding, discussing, showing, describing, mentioning, reflecting, analyzing, constituting, pertaining to and/or evidencing.

10. "Court" means the United States District Court for the Eastern District of Pennsylvania.

11. "Document" or "Documents" mean all written, typewritten, handwritten, recorded or printed matter of any kind, including, without limitation, the originals and all non-identical copies thereof, whether different from the originals by reason of any notation made upon such copies or otherwise, including, again without limitation, minutes and/or other records of meetings, agendas, bills, contracts, leases, assignments, agreements, contracts, summaries or negotiations, account books, orders, invoices, statements, bills, checks, accounting records,

vouchers, summaries, diaries, forecasts, studies, drawings, graphs, charts, reports and/or summaries of investigations or reports, strategic or business plans or summaries, brochures, pamphlets, publications, circulars, advertisements, trade letters, press releases, statements of policy, correspondence, letters, telegrams, interoffice and intraoffice communications, offers, notations of any sort of conversations, appointment books or calendars, teletypes, telefax, thermafax, confirmations, computer files, printouts of computer files, computer data (included but not limited to, information or programs stored in a computer, whether or not ever printed out or displayed); all drafts, alterations, modifications, changes and amendments of any of the foregoing; all graphic or manual records or representations of any kind, including, without limitation, photographs, microfiche, microfilm, videotape, records, motion pictures, and electronic, mechanical or electric records or representations of any kind, including, without limitation, tapes, cassettes, disks, magnetic cards, and recordings; and all other similar material which is in your possession, custody or control. Without limiting the term "control" as used in the preceding sentence, a document shall be deemed to be within your control, regardless of its physical location, if you have the right to secure the document or a copy thereof from another person or entity, either public or private, including, but not limited to, your legal counsel, having actual possession thereof.

 12. "Each" means each and every.

 13. "John Doe 6" means Plaintiff in the Civil Action, as well as each and every one of John Doe 6's representatives, agents, servants, successors, assigns, independent contractors, and all others acting for and/or on John Doe 6's behalf.

 14. "Identify" or "identity," when used in reference to an individual person, means to state his or her full name, present or last known business address, and residential address if no

present business address is known, telephone number and the name of such person's present or last known employer, place of employment and position, and the position during the relevant time period.

15. "Identify" or "identity," when used in reference to an entity, means to state its full and complete name and the present or last known address of its headquarters or principal place of business.

16. "Identify" or "identity," when used in reference to a document, means to state the nature of the document (*e.g.*, letter, memorandum, *etc.*); the date, if any, appearing on the document; the identity of the person(s) who wrote, signed, dictated or otherwise participated in the preparation of the document; the identity of all persons who received copies of the document; and the present location and custodian of the document.

17. "Identify" or "identity," when used in reference to a meeting or to an oral communication, means to state the following: the date and place thereof; the identity of the individual(s) who initiated the meeting or oral communication, the identity of each person who participated in, or who was present at, any part, or all, of the meeting or oral communication, or who became privy to the substance of the meeting or oral communication; the subject of the meeting or oral communication, and whether the meeting or oral communication occurred in person or by telephone and, if both, the method by which each individual participated.

18. "Incident" means the entire encounter between Sandusky (as defined below) and John Doe 6 (as defined above) occurring on May 3, 1998.

19. "Interrogatories" mean the First Set of Interrogatories Directed to Plaintiff John Doe 6 (as defined below) by Defendant The Pennsylvania State University.

20. "Meeting" means any assembly, communication, convocation, encounter or coincidence of two or more persons for any purpose, whether or not planned, arranged or scheduled in advance, whether in person, by telephone, or otherwise.

21. "Oral communication" means any utterance spoken or heard, whether in person, by telephone, or otherwise.

22. "Person" means any and all entities, as well as natural persons, and, without limitation, shall be defined to include natural persons, corporations, sole proprietorships, partnerships, joint owners, associations, companies, governmental bodies or agencies and joint ventures.

23. "Plaintiff" means John Doe 6 (as defined above) as the plaintiff in the Civil Action (as defined above).

24. "Police Department" means The Pennsylvania State University Police Department at University Park.

25. "Refer," "relate," "reflect," "regard," "refer to," "relate to," "relating to," and "concerning" (or forms thereof) shall mean directly or indirectly, in whole or in part, referring to, relating to, connected with, commenting upon, relevant to, impinging or impacting upon, affecting, responding to, showing, describing, representing, supporting, contradicting, stating, mentioning, showing, evaluating, recording, noting, analyzing, reflecting or constituting.

26. "Sandusky" means Defendant Gerald Sandusky, defendant in the Civil Action (as defined above).

27. "Second Mile" means Defendant The Second Mile, defendant in the Civil Act (as defined above).

28. "University" means Defendant The Pennsylvania State University, defendant in the Civil Action as well as its officials, officers, employees, representatives, servants, agents, independent contractors, and all others acting for, and/or purporting to act, on its behalf.

29. "You" or "your" means John Doe 6 (as defined above).

**Instructions**

A. The Documents requested herein are to be produced (i) as they are kept in the usual course of business or (ii) organized and labeled to correspond to the numbered paragraphs and/or categories of particular requests for production, and if responsive to more than one request for production, produced in response to the first request to which it is responsive. If there are no Documents responsive to a particular numbered request for production and/or category of Documents, so state in writing. Electronically stored information shall be produced in its native format without cleansing, purging or deletion of any and all metadata.

B. If you claim any form of privilege, whether based upon statute or otherwise, as a ground for not producing any Document or other tangible thing, set forth all facts upon which such claim of privilege is based.

C. If you claim any form of privilege, whether based upon statute or otherwise, as a ground for not producing any Document or other tangible thing, identify the subject document or tangible thing and set forth all facts upon which such claim of privilege is based, and for each Document or tangible thing as to which you claim any form of privilege, identify (i) the date or the Document, (ii) the date upon which the Document or tangible thing was prepared, (iii) the title or caption of the Document, (iv) the form of the Document or tangible thing (*e.g.*, letter, memorandum, chart, *etc.*), (v) the subject matter of the Document or tangible thing, (vi) the author(s) and/or any and all other persons involved or participating in preparing or drafting the

Document or tangible thing, (vii) and the recipient(s) of the Document and/or other tangible thing or any copy thereof, including all persons to whom the Document or tangible thing has been provided or who have it within their possession, custody or control.

D. If any Document or other tangible thing responsive to any request for production has been destroyed, identify (i) any and all persons who participated in, or who were involved in, the decision to destroy such Document or other tangible thing, (ii) any Document retention or destruction policy under which such Document or other tangible thing was destroyed and any and all persons who participated in, or who were involved in, the formulation of any such policy, (iii) the reason for the destruction of such Document or other tangible thing, and (iv) the date (or approximate date if precise date is not known) of the destruction of such Document or other tangible thing.

E. Except for reference to defined or designated terms, or unless otherwise expressly stated, each request for production shall be construed independently and not by reference to any other request for production of Documents or other tangible things herein for purposes of limitation.

F. All Documents produced in response to each request for production of Documents shall be provided in their entirety notwithstanding the fact that portions thereof may contain information not requested. All interim, as well as final, versions of the Document shall be produced, and all versions or copies that are not identical to the original or other produced copy of the Document, whether due to handwritten notations, modifications, changes, amendments, revisions or otherwise, shall be produced.

G. Where anything has been deleted from a Document produced, (i) specify the nature of the material deleted, (ii) specify the reason(s) for the deletion, and (iii) identify the person(s) responsible for the deletion.

H. If any request for production of Documents herein cannot be complied with in full, it shall be complied with to the extent possible with an explanation as to why full compliance is not possible.

**Documents Requested**

1. Any and all documents that refer to, relate to, or are otherwise identified or relied upon by you in any of your answers to, or in answering, the Interrogatories.

2. Any and all documents that relate to or support your First Amended Complaint and the allegations made therein.

3. Any and all documents you intend to rely on or use for any purpose at trial.

4. Any and all documents that support, relate or evidence in any way the damages alleged to have been suffered by John Doe 6.

5. Any and all documents that support your contention, in paragraph 12 of the First Amended Complaint, that the University "granted Sandusky unfettered access to its facilities, including but not limited to its weight rooms, training rooms, offices, and showers."

6. Any and all documents that relate to or support the alleged "social and financial relationship" between the University, Sandusky, and Second Mile, as averred in paragraph 14 of the First Amended Complaint.

7. Any and all documents related to the Incident.

8. Any and all documents related to the University's and/or Police Department's investigation of the Incident or your investigation of the Incident, whether in 1998 or subsequently.

9. Any and all documents related to communications between (a) Sandusky and (b) John Doe 6 and/or John Doe 6's mother before or after the Incident.

10. Any and all documents related to or containing statements or testimony made by John Doe 6 or his mother related to or describing the Incident or the University's investigation thereof.

11. Any and all documents that relate to or support your contention that prior to the Incident, the University knew or should have known that Sandusky showered with minor boys and/or was a sexual predator or abuser of minor boys, as alleged in paragraphs 18, 22, 23, 24, and 99 of the First Amended Complaint.

12. Any and all documents that relate to or support your contention that prior to the Incident, the University concealed from John Doe 6, his mother, and others the University's knowledge that Sandusky showered with minor boys and/or was a sexual predator or abuser of minor boys, as alleged in paragraphs 21, 22, 32, 82, 83, 98, 99, 104, 141, and 147 of the First Amended Complaint.

13. Any and all documents related to the Incident and/or the University's investigation thereof exchanged between the following: John Doe 6 or his mother; John Doe 6 and any other party, including any media entity, and prospective attorney who was not retained, or any friends or relatives; the University; the Police Department; Sandusky; Second Mile; the State College Police Department; Alycia Chambers, Ph.D.; the Attorney General's Office of the

Commonwealth of Pennsylvania; Centre County Children and Youth Services; and/or the District Attorney's Office of Centre County, Pennsylvania.

14. Any and all medical and mental health records, including any documents related to John Doe 6's meeting with Alycia Chambers, Ph.D., as alleged in paragraph 42 of the Complaint.

15. Any and all documents related to and/or describing the "conflicts of interest" alleged in paragraph 44 of the Complaint.

16. Any and all documents related to and/or describing the "procedures and methodology" alleged in paragraph 45 of the Complaint.

17. Any and all documents related to and/or evidencing your contention, in paragraph 45 of the Complaint, that the "re-interview" of John Doe 6 was intimidating and contained "subtle and not so subtle conduct on the part of the interviewers" designed to increase John Doe 6's "concern about being blamed for any trouble that might befall Sandusky as a result of the events being investigated."

18. Any and all documents related to and/or supporting your contention, in paragraph 46 of the Complaint, that "the second interview [of John Doe 6] should not have occurred[,] . . . should not have included an unknown second person[,] . . . [and that t]he second interview and the introduction of an additional adult investigator created a hostile environment causing direct harm to John Doe 6."

19. Any and all documents related to and/or supporting your contention that the University's and/or the Police Department's response to or investigation into the Incident was intimating and abusive toward John Doe 6.

20. Any and all documents related to and/or describing the "inappropriate investigation techniques" alleged in paragraph 48 of the First Amended Complaint.

21. Any and all documents related to and/or describing the way in which you believe the University and/or Police Department should have responded to or investigated the Incident.

22. Any and all documents related to the May 8, 1998 evaluation of John Doe 6 as alleged in paragraph 51 of the First Amended Complaint.

23. Any and all documents related to and/or describing the University's investigator's belief that "Sandusky's conduct warranted criminal charges" and the "District Attorney['s decision not] . . . to formally charge Sandusky" as alleged in paragraph 56 of the First Amended Complaint.

24. Any and all documents related to your contentions in paragraphs 57, 105, 116, 122, 130, and 149 of the First Amended Complaint, that as a result of the Incident and the University's actions and/or omissions, John Doe 6 has suffered, and continues to suffer, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, been the subject of public ridicule, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; was prevented and will continue to be prevented from performing his daily activities and obtaining the full enjoyment of life; has sustained and will continue to sustain loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

25. Any and all documents related to and/or in support of your contention, in paragraph 91 of the First Amended Complaint, that the injuries allegedly suffered by John Doe 6 "are expected to be permanent in nature."

26. Any and all documents related to and/or in support of your contention, in paragraph 135 of the First Amended Complaint, that John Doe 6 "suffered severe emotional distress, including severe mental anguish and horror, because of [the University's] and Second Mile's reckless, extreme and outrageous conduct."

27. Any and all documents related to and/or in support of your contention, in paragraph 139 of the First Amended Complaint, that the University and Sandusky "agreed and/or combined to unlawfully conceal from the public that Sandusky "showered with young boys prior to 1998."

28. Any and all documents related to and/or in support of your contention, in paragraph 139 of the First Amended Complaint, that the University and Sandusky "agreed and/or combined to unlawfully conceal from the public" that Sandusky sexually abused young boys in a shower prior to 1998.

29. Any and all documents comprising and/or related to John Doe 6's medical and mental health records from birth to the present.

30. A copy of documents that you understand to be from the Police Department's criminal investigation file concerning the Incident.

31. Any and all documents that you or your counsel provided to, or received from, any member of the media or third party regarding the Incident, the criminal proceedings against Sandusky, or the allegations in the First Amended Complaint.

32. Any and all of your Forms W-2 or Forms 1099 and/or other documents evidencing your income for each year you have filed federal income taxes or earned income.

33. Any and all diplomas you have earned.

34. Any and all transcripts from any school you have attended from 1997 to the present.

35. Any and all expert reports related to any allegation in the First Amended Complaint.

36. Any and all communications you have had with any other individual who claims to have been sexually abused by Sandusky.

37. Any and all documents evidencing your registration for any events organized by, sponsored by, promoted by, or in any way related to Second Mile.

Date: February 3, 2014

James A. Keller (Atty. I.D. No. 78955)
Joseph F. O'Dea (Atty. I.D. No. 48370)
Joshua W.B. Richards (Atty. I.D. No. 204315)
Gregory G. Schwab (Atty. I.D. No. 93310)
Saul Ewing LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
*Counsel for The Pennsylvania State University*

# CERTIFICATE OF SERVICE

I, James A. Keller, hereby certify that on this 3rd day of February, 2014, I did cause a true and correct copy of the foregoing First Set of Requests for Production of Documents Directed to Plaintiff John Doe 6 to be served upon the following parties via first-class mail:

Howard A. Janet, Esquire
Hal Kleinman, Esquire
Jason B. Penn, Esquire
Kenneth Suggs, Esquire
Janet Jenner & Suggs LLC
Commerce Centre East
1777 Reistertown Rd. Ste 165
Baltimore, MD 21208
*Counsel for Plaintiff*

Howard A. Rosenthal, Esquire
Patrick J. Doran, Esquire
Archer & Greiner, P.C.
One Liberty Place, 32nd Floor
1650 Market Street
Philadelphia, PA 19103

Bryan D. McElvaine, Esquire
Meaghann C. Porth, Esquire
William J. Conroy, Esquire
Campbell, Campbell, Edwards & Conroy
1205 Westlakes Drive, Suite 330
Berwyn, PA 19312
*Counsel for The Second Mile*

Charles J. Benjamin, Jr., Esquire
Richard A. Beran, Esquire
Joshua H. Roberts, Esquire
McCarter & English
735 Market St., Suite 700
Philadelphia, PA 19103
*Counsel for Gerald Sandusky*

Date: February 3, 2014